WESTERN UNION TELEGRAPH CO. v. PENNSYLVANIA R. CO.

PENNSYLVANIA R. CO. et al. v. WESTERN UNION TELEGRAPH CO.

(Circuit Court of Appeals, Third Circuit.   May 19, 1903.)

Nos. 31, 14.

1. LANDLORD AND TENANT—NOTICE TO QUIT—WAIVER.
    Pursuant to the action of its board of directors, a railroad company, by its president and secretary, served notice on a telegraph company of the termination of a lease under which the latter company had maintained its lines on the right of way of the railroad for 20 years, and requiring it to remove its poles and wires from such right of way. By the terms of the lease the telegraph company had six months within which to make the removal, and during that time the payment of rent by it was expressly waived. *Held*, that a payment of rent voluntarily made after the notice by the treasurer of the telegraph company in the usual course, and accepted by the comptroller of the railroad company, did not constitute a waiver by such company of the notice; it not appearing that such was the intention, or that the comptroller had authority to make such waiver if he had so intended.

2. TELEGRAPH COMPANIES—LEASE OF RIGHT OF WAY—RIGHT TO CONTINUE OCCUPANCY AFTER EXPIRATION.
    A telegraph company which had occupied with its lines the right of way of a railroad under a lease which in express terms required such company to remove its poles and wires after its termination, on notice by the railroad company, has no contractual right to continue its occupancy after the lease has terminated and the notice of removal has been given for the required length of time.

3. EMINENT DOMAIN—EXERCISE OF RIGHT BY CORPORATION—LAND DEVOTED TO ANOTHER PUBLIC USE.
    The right of eminent domain may be exercised by a corporation only when granted in express terms or by necessary implication, and property held and used by one corporation for a public purpose cannot be appropriated by another for its use without authority clearly expressed, or which may be implied from the fact that the use claimed is absolutely

---

¶ 3. See Eminent Domain, vol. 18, Cent. Dig. § 115.

necessary to the accomplishment of the purpose for which the claimant corporation was created.

**4. SAME—TELEGRAPH COMPANIES—PENNSYLVANIA STATUTE.**

Act Pa. March 24, 1849 (P. L. 239, § 5), chartering the Atlantic & Ohio Telegraph Company and authorizing it "to erect and construct works, edifices, fixtures and structures along and across any of the roads, highways, streets and waters within the state," but which contained no provision for payment of compensation therefor, was a grant of right of way over such roads, etc., as belonged to the state, and did not confer authority to condemn right of way for its lines over the right of way of a railroad, which is not a "highway" in the sense in which the word is used therein.

**5. SAME—FEDERAL STATUTE.**

Act July 24, 1866, 14 Stat. 221, c. 230, which authorizes any telegraph company accepting its provisions to construct, maintain, and operate lines of telegraph over and along any of the military or post roads of the United States, as construed by the Supreme Court, does not confer authority on such telegraph companies to condemn right of way for their lines over private property.

In Error to and Appeal from the Circuit Court of the United States for the Western District of Pennsylvania and the District of New Jersey.

For opinion below, see 120 Fed. 362, 981.

Rush Taggart, John F. Dillon, and Richard Vliet Lindabury, for Telegraph Co.

John G. Johnson, for Railroad Co.

Before ACHESON and DALLAS, Circuit Judges, and BRADFORD, District Judge.

DALLAS, Circuit Judge. These two cases are parts of one and the same controversy. They were argued together, and may be disposed of in a single opinion. One of them is before this court upon a writ of error to an order of the Circuit Court for the Western District of Pennsylvania, made January 20, 1903, dismissing a petition by which the Western Union Telegraph Company sought to acquire by condemnation the use of the right of way of the Pennsylvania Railroad Company and its branches for the telegraph company's lines of telegraph. The other is an appeal from a decree of the Circuit Court for the district of New Jersey, made upon January 21, 1903, awarding an injunction restraining the Pennsylvania Railroad Company and others from interfering with the telegraph lines of the Western Union Telegraph Company upon the right of way of the railroad company.

The situation of the parties, and their relation to each other, at the time these proceedings were instituted, may be briefly indicated. On June 20, 1864, the Pennsylvania Railroad Company contracted with the Atlantic & Ohio Telegraph Company for the use by the latter of the right of way of the railroad company for a telegraph line, and the line which was accordingly constructed was thereafter operated by the Western Union Telegraph Company, as lessee of the Atlantic & Ohio Telegraph Company. On September 20, 1881, however, the Western Union Telegraph Company itself entered into a contract with the Pennsylvania Railroad Company, and under this last-mentioned contract the lines of that telegraph company over and along the right of

way of the railroad company have since been maintained and operated. This contract, which by its terms was to continue in force for 20 years from its date, contained the following provisions:

"Sixteenth. If no new agreement be made by the parties hereto, the telegraph company shall at the termination of this contract, or at any time thereafter, upon receiving written notice from the railroad company, remove within six months from the receipt of said notice, all of its poles and wires and leave the property of the railroad company in good condition and free from the encumbrance thereof to the satisfaction of the general manager, or other proper officer of the railroad company, and if not so removed the railroad company may remove them at the expense of the telegraph company: provided, however, that the payment agreed to be made by the telegraph company to the railroad company in the sixth clause hereof, and by the railroad company in the eighth clause, shall not apply to the said six months, the companies respectively hereby expressly agreeing to waive the same.  *  *  *  Any easement or right of way heretofore acquired by the telegraph company upon any of the roads embraced in this agreement, either directly by contract or by assignment of contracts or agreements made by other companies with the railroad company, or with any of the companies whose roads or property are embraced in the schedule hereto attached, is hereby relinquished and abandoned, and the rights and easements of the telegraph company upon the right of way of said railroad company shall be such only as are granted by this agreement, and shall cease with its termination."

On May 15, 1902, the railroad company gave a written notice to the telegraph company, as follows:

"Pennsylvania Railroad Company.

"Philadelphia, 15th May, 1902.

"Mr. Robert C. Clowry, Prest. Western Union Tel. Co., New York City. My Dear Sir:—In pursuance of action taken by the board of directors of this company on 14th May, 1902, I send the enclosed notice. Kindly acknowledge receipt, and oblige,                    Very truly yours,
    "[Signed]                            Lewis Neilson, Secretary.

"To the Western Union Telegraph Company: You are hereby notified to remove within six (6) months from the 1st day of June, 1902, all of your poles, wires and property from the right of way and property of this company and of the other companies named in a certain agreement between this company and you dated the twentieth day of September, Anno Domini 1881 (a copy whereof is hereto attached), or named in any addition, or additions, supplement or supplements, written or verbal, to said contract, and to leave the property of this company and of the other companies referred to in good condition and free from the encumbrance of your said poles, wires, and other property, to the satisfaction of the general manager of this company. And you are also notified that if not so removed and such property left in said good condition by you, this company will, at your expense, cause your said poles, wires and other property occupying the right of way or property of this and the other companies referred to, to be removed and said property left in good condition free from the encumbrances of the said wires, poles, and other property, to the satisfaction of the general manager of this company.

"In witness whereof, the said the Pennsylvania Railroad Company has caused its corporate seal to be hereunto affixed, duly attested by the signature of its proper officers, this fourteenth day of May, Anno Domini 1902.

"The Pennsylvania Railroad Company,
    "By [Signed] A. J. Cassatt, President.
"Attest: [Signed] Lewis Neilson, Secretary.   [Seal.]"

On June 20, 1902, the telegraph company sent to the railroad company $6,250, "payment due June 20, 1902, as per contract," and this sum the railroad company's comptroller accepted. It does not appear,

however, that he either intended or was authorized to waive the notice of May 15, 1902, which, it will be observed, had been ordered by the board of directors of the railroad company, and was given under its corporate seal, attested by the signature of its president and secretary. Moreover, this remittance did not relate to a time extending beyond that within which the notice had required that the removal should be effected, but covered a period during the running of the notice, when the telegraph company was, under the contract, entitled to continue its occupation without payment of rent. In short, a sum of money which was not demanded nor demandable was voluntarily paid, not in extension of the term, but upon the erroneous assumption that it was due "as per contract"; and although a minor officer or agent of the railroad company inadvertently accepted this payment, the notice which had been previously given was not, in our opinion, in any way affected thereby. On June 25, 1902, the Pennsylvania Railroad Company entered into a contract with the Postal Telegraph-Cable Company, granting to that company certain pole facilities upon the railroad company's right of way for 15 years, and the continued presence of the Western Union Company's lines thereon conflicts with the provisions and purposes of that contract.

The decree in the district of New Jersey was not made upon the merits, but upon the ground that it would result in irreparable injury to no one, and might soon be reviewed upon appeal, whereas an order refusing an injunction would have entailed much loss to the telegraph company, and could not have been appealed from. But now, as to both cases, the substantial rights of the parties are for determination, and to their consideration we accordingly proceed.

The controlling question may be plainly stated. It is this: Has the telegraph company a contractual right to maintain its telegraph lines upon and over the right of way of the railroad company, or can it, independently of contract, acquire such right by condemnation? The first part of this inquiry admits of but one answer. The contract of September 20, 1881, expressly canceled all contracts theretofore made, and declared that any easement or right of way theretofore acquired by the telegraph company was relinquished and abandoned, and that the rights and easements of the telegraph company upon the right of way of the railroad company should be such only as were granted by that agreement, and should cease with its termination. Hence, as the agreement had terminated when, in precise accordance with its terms, the notice to remove within six months from the first day of June, 1902, was given, it is manifest that no right of occupancy, founded thereon, could exist beyond December 1, 1902.

If the asserted right of condemnation exist, it must be because it is conferred either by state law or by act of Congress. As to the law of New Jersey there is no question, the learned counsel of the telegraph company conceding that, as to that state, the right claimed rests upon the act of Congress hereafter referred to, although "the method of making that right effective" is provided by the state statute. But, as respects the state of Pennsylvania, it is contended that its law not only provides the mode of procedure, but also vests in the telegraph company the right to condemn which it asserted in the Circuit Court

for the Western District of that state. We cannot sustain this contention. It is based upon the supposition that the railroad company's right of way is subject to appropriation under the authority given to the Atlantic & Ohio Telegraph Company, by its charter, "to erect and construct works, edifices, fixtures, and structures along any of the roads, highways, streets, and waters within this state." But though a railroad is, no doubt, a "highway," it is quite clear, we think, that it is not a highway to which this grant of authority is applicable. Railroads are, it is true, subject to use for the public benefit, and in that sense they are public highways; but they are owned, not by the public, but by corporations, which, so far at least as ownership is concerned, are private corporations. Consequently it could not have been intended that they should be to any extent taken without compensation, and yet no provision for compensation was made with respect to highways, although for any "land" that should be occupied it was expressly provided that, if the parties could not agree, proceedings might be taken to determine "the price or compensation to be paid * * * for such land taken or used, or the damages done thereto." The distinction thus made is obvious, and the reason for making it is apparent. Nothing was said as to compensation for roads, highways, streets, or waters, because those in contemplation were only such as the state itself owned, and the use of which it might therefore grant without exacting any recompense, whereas in delegating the power of eminent domain—to appropriate "lands"—the requirement of compensation was necessarily imposed. But, even if the authority given to occupy highways was not manifestly limited—as we think it was—to the public highways of the commonwealth, it is at least certain that no authority to enter upon the right of way of railroads was plainly and distinctly granted, and it is well settled that the right of eminent domain may be exercised by a corporation, in any case, only when granted in express terms or by necessary implication, and that property held and applied by one corporation for a public use cannot be appropriated by another for its use without authority clearly expressed, or which may be implied from the fact (which in this case does not exist) that the use claimed is absolutely necessary to the accomplishment of the purpose for which the claimant corporation was created. Penna. R. R. Co.'s Appeal, 93 Pa. 150; Pittsburgh Junction R. R. Co.'s Appeal, 122 Pa. 511, 6 Atl. 564, 9 Am. St. Rep. 128; Sharon Ry. Co.'s Appeal, 122 Pa. 533, 17 Atl. 234, 9 Am. St. Rep. 133; Groff's Appeal, 128 Pa. 621, 18 Atl. 431; Perry Co. R. R. v. N. & S. V. R. R. Co., 150 Pa. 193, 24 Atl. 709; Phillips v. D. W. & P. R. R. Co., 78 Pa. 177; Glover v. Boston, 14 Gray, 282.

But it is further insisted that the telegraph company having accepted the act of Congress of July 24, 1866, 14 Stat. 221, c. 230, entitled "An act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military, and other purposes," "the actual appropriation of the railroads of the Pennsylvania Railroad Company to the use of the Western Union Telegraph Company" is thereby effected. That part of the statute which is relied upon in support of this proposition is set out in the brief of the telegraph company as follows:

"That any telegraph company, now organized or which may hereafter be organized under the laws. of any state in this Union, shall have the right to construct, maintain and operate lines of telegraph  *  *  *  over and along any of the military or post-roads of the United States, which have been or may hereafter be declared such by act of Congress:  *  *  *  provided, that such lines of telegraph shall be so constructed and maintained as not to  *  *  *  interfere with the ordinary travel on such military or post roads."

If the question of construction thus presented were an open one, we could not yield our assent to the contention of the learned counsel of the telegraph company with respect to it. But it is not an open one. In Pensacola Co. v. Western Union Tel. Co., 96 U. S. 1, 24 L. Ed. 708, Mr. Chief Justice Waite, referring to this act of Congress, said:

"It gives no foreign corporation the right to enter upon private property without the consent of the owner and erect the necessary structures for its business; but it does provide that, whenever the consent of the owner is obtained, no state legislation shall prevent the occupation of post roads for telegraph purposes by such corporations as are willing to avail themselves of the privileges.  *  *  *  No question arises as to the authority of Congress to provide for the appropriation of private property to the uses of the telegraph, for no such attempt has been made. The use of public property alone is granted. If private property is required, it must, so far as the present legislation is concerned, be obtained by private arrangement with its owner. No compulsory proceedings are authorized."

The meaning of this language is too plain for question. If the interpretation which it attaches to the statute is to be accepted, that which the telegraph company asks this court to put upon it is, of course, impossible. But we are asked to disregard the parts of the opinion above quoted, and other of its statements of like import, upon the ground that they "are mere dicta." This we decline to do. Careful reading of the whole report of the case has satisfied us that in deciding it the Supreme Court thoroughly considered the statute and the scope of the authority conferred by it, and that in saying that "no compulsory proceedings are authorized" by it the Chief Justice deliberately and advisedly spoke for the other members of the court as well as for himself. That it settled the law was distinctly declared in Western Union Tel. Co. v. Ann Arbor R. Co., 178 U. S. 243, 20 Sup. Ct. 869, 44 L. Ed. 1052, where, in an opinion by the present Chief Justice, it was said:

"It was not argued by counsel for the telegraph company that the telegraph company had any right under the statute, and independently of the contract, to maintain and operate this telegraph line over the railroad company's property; and it has been long settled that that statute did not confer on telegraph companies the right to enter on private property without the consent of the owner, and erect the necessary structures for their business; 'but it does provide that, whenever the consent of the owner is obtained, no state legislation shall prevent the occupation of post roads for telegraph purposes by such corporations as are willing to avail themselves of its privileges.' Pensacola Telegraph Company v. Western Union Telegraph Company, 96 U. S. 1 [24 L. Ed. 708]. 'No question arises as to the authority of Congress to provide for the appropriation of private property to the uses of the telegraph, for no such attempt has been made. The use of public property alone is granted. If private property is required, it must, so far as the present legislation is concerned, be obtained by private arrangement with its owner. No compulsory proceedings are authorized.'  *  *  *  As we have said, it was not asserted in argument that the telegraph company had the right, independently

of the contract, to maintain its lines on the railroad company's property, and, in view of the settled construction of the statute, we could not permit such a contention to be recognized as the basis of jurisdiction."

These deliverances are conclusive. They have been so regarded by the Circuit Court for the Northern District of Ohio (Postal Tel. Co. v. Cleveland, etc., Co., 94 Fed. 234), and we find nothing in any decision of the Supreme Court which indicates a purpose to repudiate or depart from them. Even if we doubted their correctness, we would feel bound to accept them as authoritative.

Having reached the conclusion that the fundamental position of the telegraph company, in each of these cases, is untenable, no other of the points presented in argument need be considered.

From what has been said it results that the order of the Circuit Court for the Western District of Pennsylvania must be affirmed, with costs, and the decree of the Circuit Court for the District of New Jersey must be reversed, with costs; and it is so ordered.

BRADFORD, District Judge, concurs in the result.