THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. THE KANSAS CITY, MEXICO & ORIENT RAILWAY COMPANY et al.

No. 12,814. (70 Pac. 939.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Condemnation of Railroad Property.* One railway corporation may, under the general statutes of eminent domain, condemn for its right of way real estate belonging to another railway corporation not in actual and necessary use for railway purposes.

2. —— *Jurisdiction of Board of Railroad Commissioners.* Section 14, chapter 286, Laws of 1901 (Gen. Stat. 1901, § 5974), confers jurisdiction upon the board of railroad commissioners only in cases of the crossing of the tracks of one railroad by those of another and the uniting of the tracks of two railway companies, upon the grounds of one of them. It does not extend such jurisdiction to the impinging of the right of way of one railway upon the grounds of another in such manner as not to involve an intersection or union of tracks, or to the taking of the grounds of one railway for the right of way of another to the entire exclusion of the established road from the territory taken.

Error from Lyon district court; DENNIS MADDEN, judge. First opinion filed December 6, 1902. Affirmed. Rehearing granted January 5, 1903. Second opinion filed October 10, 1903. Reversed.

STATEMENT.

THE Atchison, Topeka & Santa Fe Railway Company commenced an action against the Kansas City, Mexico & Orient Railway Company to enjoin the latter from appropriating for right-of-way purposes a part of the Santa Fe company's real estate. The petition alleged that the plaintiff was a corporation under the laws of the state of Kansas, engaged in the operation of a line of railroad, and in the business of a common carrier, and as such the owner of extensive track and roundhouse and other railroad facilities constructed on real estate in and near the city of Emporia, which it had acquired for railway purposes; that the lands so acquired were all necessary for the proper fulfillment of the public duties pertaining to plaintiff's business as a common carrier, were all actually devoted to such uses, and that their condemnation by the Orient company would interfere with its roundhouse, storage tracks, and other property, to its great and irreparable injury. The petition contained a further allegation, as follows:

"The plaintiff further says that the defendant, the Kansas City, Mexico & Orient Railway Company, has never by a proper exercise of the rights of eminent domain under the laws of the state of Kansas acquired any right to go upon the lands of said plaintiff company hereinbefore described, or any of them, or to cross, intersect, or unite, or in any manner interfere with the tracks, roundhouses, buildings and other property of the plaintiff located upon the premises owned by said plaintiff and hereinbefore described, or any part thereof."

The answer pleaded the incorporation of the defendant as a railway company under the laws of Kansas, and set forth a condemnation of the land described in the petition for railway purposes, under the general law relating to that subject, and the assessment of

damages therefor by commissioners appointed by the judge of the district court of the proper county. It denied that the land taken was acquired for railway purposes; that it was necessary for such uses, or that it was devoted in good faith to such uses. It further charged a vexatious obstruction of the Orient company in its efforts to establish a line of railroad by the hasty building of useless tracks from worn-out material, athwart the course of the Orient road through land unused by the Santa Fe company for many years, and prayed for an injunction against interference and molestation. The reply denied the allegations of the answer inconsistent with those of the petition.

On the trial a large volume of evidence was produced tending in some measure to sustain the claims of each contestant. It did appear that the proposed right of way of the Orient company included a coal-trestle and certain tracks adjacent to the roundhouse of the Santa Fe company, previously established, actually in use, and essential to its business. The Orient company, however, disclaimed any intention of obstructing or interfering with such property, and an injunction was granted against its so doing. The further restraint of the Orient company was denied, and the Santa Fe company was enjoined from interfering with the Orient company in its appropriation of all other land involved, which consisted of three portions, aggregating about two acres, cut from extremities of the Santa Fe company's tract. The Santa Fe company asks for a reversal of the judgment enjoining it and refusing further relief against the defendant company.

The relation of the Orient company's proposed right of way to the Santa Fe company's property, excepting one of the small portions mentioned, may be seen from the following plat.

Railway Co. v. Railway Co.

*Robert Dunlap*, and *A. A. Hurd*, for plaintiff in error.

*J. McD. Trimble, John A. Eaton*, and *John G. Egan*, for defendants in error.

The opinion of the court was delivered by

BURCH, J : The questions arising from the record in this cause relate to the right of one railway company to take the land of another for a right of way, and their solution depends upon the construction to be given to the statutes granting the power of eminent domain to railway corporations. Such statutes are sections 47, 81, and 87, chaper 23, General Statutes of 1868, and section 14, chapter 286, Laws of 1901 (Gen. Stat. 1901, § 5974), which reads as follows :

"Any railroad company authorized to operate a railroad in this state desiring to cross or unite its track with any other railroad upon the grounds of such other railway corporation shall make application in writing to the board of railroad commissioners, stating the place of crossing or intersection ; whereupon the board of railroad commissioners shall fix a day for the hearing of such application, and notify the railway corporations interested, at which time, unless further time be granted by the board, the corporations interested shall be heard in regard to the necessity, place, manner and time of such crossing or connection ; and upon such hearing either party or the board may call and examine witnesses in regard to the matter ; and the board shall, after such hearing and a personal examination of the locality where a crossing or connection is desired, determine whether there is a necessity for such crossing or not, and, if so, the place thereof, whether it shall be over or under the existing railroad, or at grade, and in other respects the manner of such crossing and the terms upon which the same shall be made and maintained ; provided, that no crossing shall be made through the yards or over the switches or side-tracks of any exist-

ing railroad, if a crossing can be effected at any other place that is practicable.''

Plaintiff in error contends that the Orient company should have proceeded in its attempted condemnation under the provisions of the act of 1901; that the board of railroad commissioners have special jurisdiction over cases of this character, and that the statute creating that tribunal supersedes all others relating to the same subject-matter. It will be observed, however, that section 14 of that act refers only to crossings of one railroad by another and to the uniting of tracks. A railway-crossing is said to be ''an intersection of railway-tracks.'' (5 Cent. Dict. 4942.) The word ''track,'' as applied to a railroad, is defined to be ''the two continuous lines of rails on which railway-cars run'' (6 Cent. Dict. 6413); and ''to cross'' means ''to pass from side to side of.'' (2 Cent. Dict. 1362.) In order, therefore, to unite tracks their rails must be joined, and one railroad cannot be said to cross another unless the rails of one extend over that rail of the other which is farthest from the side of approach. In this view, the phraseology of the law does not include the impinging of the right of way of one railroad upon the grounds of another in a manner not involving their tracks, and the broad construction necessary to sustain the claim of plaintiff in error is forbidden.

The sections of the act in juxtaposition with section 14, relating to switch connections and systems of interlocking or automatic signaling apparatus, further seem to some extent to confine the operation of the law within the limits stated.

But the crossings and connections provided for are to be upon the grounds of the railroad which is already established. Its proprietorship is not to be destroyed

or its use of the place of contact cut off.   Such, how-
ever, was not the purpose of the Orient company's
proceeding.   It sought no connection and desired no
common crossing with the Santa Fe railway.   It de-
sired to condemn and appropriate to its own exclusive
use the land located as its right of way and to oust
the Santa Fe company from such territory altogether.
No mutuality of occupation was intended to remain,
and hence the act appealed to could have no room for
application.   This interpretation of the law is sup-
ported by the judgments of other courts.   In *Pittsb.
Junction R. Co.'s Appeal*, 122 Pa. St. 511, 528, 9 Am.
St. Rep. 128, in the opinion it was said :

"Upon exceptions to the master's report, the court
below held that the act of 1871 had no application, for
the reason that it referred to railroad-crossings alone,
while this was not a case of crossing at all in the
proper sense of the term.   In this we think the learned
judge was clearly right.   The act of 1871 relates
' to crossings of lines of railroads by other railroads.'
There was no attempt here to cross the line of plain-
tiff's road.   It was an attempt to run through the
plaintiff's yard, and the crossing of some of its yard
tracks and switches, which were merely incident to
the use of its main line.   As was well observed by the
court below : 'The attempt is not simply to cross the
yard and tracks with a common use, but absolutely
to take from plaintiff a portion of their yard for the
sole use of the defendant.   The issue is not in what
mode the defendant should cross plaintiff's property,
but solely whether it can cross at all.' "

In the case of *A. T. & S. Railroad v. D. & N. O.
Railroad*, 110 U. S. 667, it was held :

"The provision in the constitution of Colorado that
'every railroad company shall have the right with its
road to intersect, connect with or cross any other
railroad,' only implies a mechanical union of the
tracks of the roads so as to admit of the convenient

passage of cars from one to the other, and does not of itself imply the right of connecting business with business.''

In *State v. New Haven & Northampton Co.*, 45 Conn. 331, it was decided that the location of a railroad for two miles close beside a turnpike, the traveled path of which was in some places changed to make room for the road, did not constitute an ''intersecting'' of the highway by the railroad, that term applying only to the case of a railroad crossing a highway. (See, also, *Railroad Co. v. City of Belleville*, 122 Ill. 376.) Hence the board of railroad commissioners had no jurisdiction to determine the rights of the parties to this suit.

It is further argued by plaintiff in error that the general law of eminent domain did not authorize the taking by the Orient company of the property sought to be condemned, because it was already devoted to an equally urgent public use by another railroad company, and was necessary to such use. In Lewis on Eminent Domain, second edition, volume 1, section 267, it is said:

''The general authority to locate and construct a railroad from one point to another does not authorize the taking of property already devoted to railroad uses. In one of the cases cited the court says: 'A charter to build and maintain a railroad between certain points, without describing its course and direction, but leaving that to be determined and established by the corporation, as provided by the general laws, does not *prima facie* give any power to lay out the road over land already devoted to and within the recorded location of another railroad. It is not to be presumed that the legislature intended to allow land thus devoted to one public use to be subjected to another, unless the authority is given in express words or by necessary implication. And such implication can only

be found in the language of the act, or from the application of the act to the subject-matter ; so that the railroad could not be laid, in whole or in part, by reasonable intendment, on any other line.' The legislature may authorize one railroad to take the property of another, and, as indicated in the opinion just quoted, this may be done by express words, or by necessary implication.   These general rules are undoubted but their application to particular cases is often attended with much difficulty, as will appear from the following sections.''

But the mere fact that land is owned by one railroad company does not forbid its acquisition by another. Exclusiveness of right must depend upon reasonable requisiteness.   One occupation justly may be reduced to the subservience of another paramount in its importance.   Hence the character and extent of the use of its real estate by one railway company are always open to inquiry when sought to be taken by another under the power of eminent domain.   In the same section of the work quoted, the author says :

''The general rule above stated does not apply to prevent one railroad taking the property of another, which is not in use for railroad purposes and not necessary to the proper exercise of the corporate franchises.''

It follows from this that, in all cases in which an appropriation of land for the purposes of a railroad about to be constructed is desired, it may proceed to take any real estate necessary for its own use, not already absorbed in the necessary satisfaction of similar wants.

The condemning company must, in the first instance, determine the relative requirements of the two roads for itself.   It does this by laying out its road, procuring an assessment of damages, and proceeding

37—67 KAN.

to build. If obstructed in its operations it may invoke the aid of a court of equity, and if the company through whose land the new road passes feels aggrieved, it may resort to the same forum for redress. The issues in such cases lie within the realm of fact, and the judgment of the trial court upon them is conclusive to the same extent as in other cases. In the case at bar issues of the precise character described above were framed by the pleadings. Upon the hearing the district court had before it all the facts which each party could urge in its own favor. Enough having been produced to sustain the judgment rendered, this court cannot interfere.

The writer is of the opinion that the views expressed in the foregoing discussion relating to the scope of the act of 1901 are too narrow. Separating the most pregnant parts of the first sentence of section 14 by punctuation marks, the law reads as follows:

"Any railroad company authorized to operate a railroad in this state desiring to cross, or unite its tracks with, any other railroad, upon the grounds of such other railway corporation, shall make application in writing to the board of railroad commissioners, stating the place of crossing or intersection."

In construing this language it is not necessary that a railroad should be reduced to a track. The title of the act reads, "An act concerning railroads and other common carriers," and if the same condensing process were applied to the word as used there the law would fail. In the Century Dictionary, volume 5, page 4942, under the title "Railway," the following description is given:

"The parts of an ordinary passenger and freight railway proper are the road-bed, ballast, sleepers, rails, rail-chairs, splices, spikes, switches and switch mechanism, collectively called *permanent way*, and the

signals ; but in common and accepted usage the meaning of the terms *railway* and *railroad* has been extended to include not only the permanent way, but everything necessary to its operation, as the rolling-stock and buildings, including stations, warehouses, roundhouses, locomotive shops, car shops, and repair shops, and also all other property of the operating company, as stocks, bonds, and other securities."

Therefore, the legitimate meaning of the statute properly may be held to be : Any railroad company authorized to operate a railroad in this state desiring to cross another railroad's grounds, or unite its track with any other railroad upon the grounds of such other railway corporation, shall make application, etc.

At the time of the passage of the act of 1901, the law of 1868 was the only one in force upon the statute-book. Section 47 of that law, which left the conduct of contending railway companies to be governed, in the first instance, by the "golden rule," was evidently deemed to be insufficient. Whenever one railway company desired to enter upon the grounds of another it usually selected "seeling night" or the Sabbath day as the time for its operations. The approach of one railroad to another led to a system of fortification and depredation, raid and reprisal, born probably of other motives than simple zeal for the public good. Every railroad company is as tenacious of its grounds as it is of its track. These may be crossed from point to point without an intersection of tracks. Roundhouses, coal-trestles and other structures are as important to the company as tracks themselves, and may be interfered with, and no good reason appears why the jurisdiction of the board of railroad commissioners should be forbidden to attach until two tracks are about to cross. The same evils

arise in each case, and require the same remedy.  The board of railroad commissioners is better equipped than a court of equity for the determination of all such controversies.  The questions themselves are really administrative in character and not judicial, though involving the exercise of sound and expert judgment.  The procedure prevents trespass by determining the question of necessity before any entry is made, and the award can do substantial justice to all the interests of both roads, general and local, and thereby to the public as well.  All this was in the purview of the legislature with respect to tracks, and why not with respect to the ground a few feet from the ends of the ties as well as to that between the rails?  I am satisfied the legislature used the word "railroad," in the section under consideration, in a sense large enough to include grounds used for railway purposes, and that the board of railroad commissioners were intended to have jurisdiction over all conflicts arising from the crossing of one company's property by another road.

Mr. Justice JOHNSTON concurs with me in these views.  However, the majority of the court being of a contrary opinion, the judgment of the district court is affirmed.

DOSTER, C. J., SMITH, CUNNINGHAM, GREENE, POLLOCK, JJ., concurring.

———————

OPINION ON REHEARING.

No. 12,814.  (73 Pac. 899.)

SYLLABUS BY THE COURT.

1. RAILROADS — *Condemnation of Railroad Property.*  One railway corporation cannot, under the general statutes of eminent domain of this state, condemn for right of-way purposes the land of another railway corporation already in actual and necessary use for railway purposes.

Railway Co. v. Railway Co.

2. —— *Attempted Condemnation Held Void.* An attempted condemnation by one railway corporation, under the general stat utes of eminent domain of this state, for right-of-way purposes, of an entire tract of land belonging to another railway corporation, a portion of which is already in actual and necessary use by the owner for railway purposes, and for all of which a single award of damages is made, is void as an entirety.

3. —— *Condemnation Enjoined — Jurisdiction in Equity.* In a suit in equity brought by a railway corporation to enjoin the unauthorized condemnation of its property by another railway corporation for right-of-way purposes, under the general statutes of eminent domain, the court has no authority to sever from the whole a portion of a tract condemned as an entirety and allow the proceedings to stand as to the remainder while invalidating them as to such portion; nor can the condemning corporation cure the unwarranted appropriation of an entire tract by disclaiming the right to use or occupy a portion of it.

The opinion of the court was delivered by

BURCH, J. : When this case was first presented, it was decided upon the theory that the real controversy related to the refusal of the trial court to enjoin the taking by one railway corporation, under the statutes of eminent domain, of property belonging to another railway corporation, whose actual occupancy by the owner was questioned, whose use for its corporate purposes was denied, and whose necessity for such purposes was assailed. The majority of the court concluded that a dispute of this character does not fall within the jurisdiction of the board of railroad commissioners ; that no tribunal has been provided by law to pass upon the propriety of a taking by one railroad company of the land of another in advance of condemnation under the statute ; that the only remedy of an aggrieved landowner in such a case is whatever a court of equity can furnish ; and that the judgment of such a court upon issues of fact of the character described is conclusive to the same extent as in other cases.

In consequence of a rehearing granted under rule 22 of this court, it has become plain that more is involved in the case than has been determined.

The district court granted a portion of the relief prayed for by the plaintiff upon the allegations of its petition, and enjoined the Orient company from interfering with, or obstructing, that part of the lead-track of the Santa Fe company opposite to, and directly south of, its roundhouse, and also that part of the side-track opposite to, and directly south of, its coal-trestle. This judgment itself implies and discloses an attempt at an appropriation by the condemnation proceedings of the property protected by the injunction, and shows that such property was so conditioned as to warrant the interposition of the court.

There is abundant evidence in the record that the report of the condemnation commissioners included land actually occupied by at least one of the Santa Fe company's railway side-tracks. Counsel for the respective parties do not agree as to the quantity of land affected, nor as to the full extent of the interference, but in referring to the track south of the coal-trestle counsel for the Orient company make the following statement in their brief on the rehearing : "The boundary of the Orient right of way would lap over a very few feet upon the extreme west end of that ground-track." There is, therefore, no dispute as to the fact of appropriation. There is likewise abundant evidence in the record that this track was properly used in connection with the coal-trestle, which was erected in good faith to meet the necessities of the business of the Santa Fe company as a common carrier, and that the whole improvement cost some $6300. The evidence of the Santa Fe company shows that estimates for this work were submitted in January, and that authority

Railway Co. v. Railway Co.

for its prosecution was given in April.   Counsel for
the Orient company concede that it was commenced
on May 6 ; that the condemnation commissioners did
not begin their work until May 27 ; and that they
did not file their report until June 14.   Until the
commissioners' report was filed it could not be known
whose land had been taken, or in what quantity,
or in what locality, and, at least, until the com-
missioners approached the land of the Santa Fe
company in the actual work of condemnation that
company was fairly entitled, without question as to
its motive, to make any use of its property which the
legitimate advancement of its business interests de-
manded.   Besides this, the record shows that upon
the production of this evidence counsel for the Orient
company disclaimed any right to obstruct or interfere
with the property protected by the injunction.   Hence,
all further controversy as to the character of the use
to which the land taken was put is also eliminated.
The judgment involving the determination of these
facts is not appealed.

The record, therefore, fairly presents a case of an
attempted condemnation by one railroad company,
under the general statutes of eminent domain, of land
owned by another railroad company already in actual
and necessary use for railroad purposes.

Under the authority of the text quoted in the for-
mer opinion (1 Lew. Em. Dom., 2d ed., § 267), and
the adjudicated cases upon which that text is based,
this cannot be done except by express statutory war-
rant, or by necessary implication from the language
of the statutes, when an effort to apply the law is
made.   The latest decisions of the courts support this
doctrine.   (*Western Union Tel. Co. v. Pennsylvania R.
Co.*, 120 Fed. [C. C.] 362, decided in January, 1903,

and affirmed in *Western Union Telegraph Co. v. Pennsylvania R. Co.*, 123 Fed. [C. C. A.] 33, decided May, 1903; *Indianapolis & V. R. Co. v. Indianapolis & M. R. Transit Co.*, [Ind. App.] 67 N. E. 1013, decided in June, 1903.) The opinions in these cases collate numerous authorities and without doubt announce the law.

The statutes cited in the original opinion are barren of any such express power, and the disclaimer negatives any excuse to resort to the doctrine of implication. Therefore, the attempted condemnation of so much, at least, of the ground of the Santa Fe company as was occupied by the coal track referred to was void.

So much of the report of the condemnation commissioners as relates to the lands of the Santa Fe company is as follows:

"The Atchison, Topeka & Santa Fe Railway Company is the owner of the following-described tracts or lots of land in Lyon county, Kansas, to wit: Lots numbered four (4), five (5) and six (6) of block numbered one (1); lots numbered three (3) and four (4) of block numbered two (2); and lot numbered three (3) of block numbered six (6), all in Ruggles's addition to Emporia, a subdivision of the north half of the south half of the northeast quarter of section 16, township 19 south, range 11 east; also a small triangular piece of ground in the southwest corner of the lands of said company in the southwest quarter of northwest quarter of section 16, township 19 south, range 11 east, as shown on plat annexed; over, through and upon which the said route or right of way of the said The Kansas City, Mexico & Orient Railway Company is surveyed and located, as shown on the map or plat hereto attached and made a part of this report, and marked 'Exhibit A,' which map or plat correctly shows the exact location of the said route or right of way as accurately surveyed and located over, through and upon the said tract or lot of

land, and the quantity of land necessary to be taken from said tract or lot of land for said purpose.

"And we hereby appraise the value of the land taken for said route, right of way, and other purposes, including any and all crops and improvements upon the land actually taken or appropriated from said tract or lot of land, at four hundred dollars ($400).

"And we hereby assess the damages to said tract or lot of land by reason of the appropriation of said route or right of way, etc., over, across and upon the same, at fifty dollars, our total appraisement of said value and assessment of said damages being four hundred and fifty dollars ($450)."

From this it will be seen that as to the property of the Santa Fe company the condemnation proceeding was an entirety.   A gross allowance of $400 for land taken was made, and a gross allowance of $50 damages to land not taken was made.

Under the statutes the condemning company has the absolute and uncontrolled direction of the condemnation proceeding.   The commissioners lay off the route for such distance as the company desires, of such width as the company desires, within the limits of 100 feet, and upon such location as the company desires.   If the company desires the land of another railroad company, the coveted quantity is surveyed and appraised, and a report of the proceeding made and filed.   Upon making a deposit of damages and completing the county records, the company has the right to occupy the land and by building the road may acquire its perpetual use.   Against this proceeding the statute has given the landowner no remedy except by appeal, and by strict phraseology has limited the question to be tried upon appeal to the matter of damages alone.   The statute reads:

"Before any board of county commissioners shall proceed to lay off any railroad route as herein pro-

vided, notice of the time when the same shall be com-
menced shall be given, by publication thirty days
before the time fixed, in some newspaper published
in such county, or if none be published therein, then
in one of general circulation in the county wherein
such railway is to be laid off; and an appeal shall be
had from the determination of the board of county
commissioners as to the value of the land, crops,
buildings and other improvements on said land, and
for all other damages sustained by such person or per-
sons by reason of such right of way so appropriated,
in the same manner as appeals are granted from the
judgment of a justice of the peace to the district
court; and said appeal and all subsequent proceedings
shall only affect the amount of compensation to be al-
lowed, but shall not delay the prosecution of the work
on said railroad, upon said company paying or de-
positing the amount so assessed by said commissioners
with the county treasurer of the county within which
the said lands are situated; and upon the payment or
deposit, as aforesaid, of the amount so assessed by said
commissioners, and upon said company executing a
bond, with sufficient security, to be approved by the
county clerk, to pay all damages and costs which said
company may be adjudged to pay by said district
court, said company may, notwithstanding said ap-
peal, take possession of and use the said land and
construct its road over the same." (Gen. Stat. 1901,
§ 1364.)

If, therefore, the landowner either accepts the con-
demnnation money or takes an appeal, the perpetual
use of the land vests in the condemning company when
compensation is made.   And if an appeal be taken no
jurisdiction can vest in the appellate court to try the
rightfulness of the appropriation of a part of any
specific tract, or to eliminate from the condemnation
proceeding a part of a tract wrongfully taken, or upon
such elimination to apportion gross awards of damages
for land taken and for injury to land not taken.   To

Railway Co. v. Railway Co.

assume such jurisdiction in the face of the statute would be usurpation on the part of any court in which an appeal has been lodged.

"Now, if the legislature violates no constitutional provision in making the award of the commissioners final, if the landowner has no constitutional right to an appeal from such an award, it would seem to follow necessarily that that which the legislature may withhold altogether it may grant upon conditions. The appeal being a matter of favor, and not a matter of right, the power that grants it may prescribe the terms upon which it shall be taken. How can it be held that a landowner who has no right to an appeal can, when one is tendered to him upon conditions, accept the tender and repudiate the conditions? Can he, of his own volition, enlarge the scope of a grant, which is a mere matter of legislative favor? Many words cannot make this clearer; the landowner's constitutional guaranty terminates with the award of the commissioners. The appeal is a favor, and carries with it all the conditions the legislature has seen fit to impose. An examination of the statute leaves no doubt as to the extent of these conditions; it provides that the appeal shall only be as to the amount of damages, and that it shall not delay the prosecution of the work." (*C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.*, 28 Kan. 453, 464.)

Under these circumstances the only adequate remedy available to the landowner is an injunction from a court of equity. (2 Lew. Em. Dom., 2d ed., § 643, and cases cited.) It is elementary law that statutes conferring the power of eminent domain are to be strictly construed, and that in the exercise of the right such proceedings only are available as the legislature provides. (1 Lew. Em. Dom., 2d ed., §§ 253, 254, and cases cited.) Therefore, a court of equity, in a suit brought by a landowner to enjoin the unauthorized taking of his property under the statutes of emi-

nent domain, has no power to enlarge or supplement such statutes by any improvisation of its own whereby a part of a tract condemned as an entirety may be severed from the whole, and the condemnation proceeding invalidated as to such part while allowed to stand undisturbed as to the remainder. Nor can the condemning party cure an unauthorized proceeding relating to an entire tract by disclaiming the right to use or occupy a portion of it. Such action would result in depriving the landowner who had been compelled to forego an appeal in order to protect his rights of any opportunity to contest the amount of damages awarded. Condemnation proceedings for any quantity of land appraised as an entirety, and for which a single award of damages is made, must be treated as an entirety, and must stand or fall as a whole.

From this it follows that the condemnation proceeding assailed in this action is void as to all property described in that part of the commissioners' report quoted above, and that the injunction prayed for in the petition should have been granted.

In the syllabus of the first opinion filed it is stated that one railway corporation may, under the general statutes of eminent domain, condemn for its right of way real estate belonging to another railway corporation, not in actual and necessary use for railway purposes. This must be true, or it might be possible for one railway company, by a skilful extension of its grounds, to exclude another railway company from access to a city or other given territory. In its application, however, the rule is subject to some obvious restrictions. Every square foot of extensive yards or commodious grounds need not be improved or occupied to be absorbed in railway uses; an opportunity for necessary expansion and a reasonable anticipa-

tion of future needs should be indulged ; mere matters
of convenience and economy to the condemning com-
pany are alone insufficient to justify a taking ; and
when the rule is brought to bear upon varying states
of fact other considerations may arise of the highest
importance in determining the manner in which the
relative requirements of the two roads should be ad-
justed.

In other respects the positions taken in the former
opinion of the court are likewise adhered to, but, for
the reasons stated above, the judgment denying the
full relief prayed for in the petition is reversed, and
the trial court is directed to proceed in accordance
with the views herein expressed.

All the Justices concurring.