CHICAGO, R. I. & P. RY. CO. v. WILLIAMS et al.

(Circuit Court, D. Kansas, First Division. October 31, 1906.)

No. 8,416.

1. EMINENT DOMAIN—DELEGATION OF POWER—PROPERTY PREVIOUSLY DEVOTED TO PUBLIC USE.

General power conferred by the Legislature upon a local board to establish highways does not empower such board to condemn for highway purposes land which has previously been appropriated under the power of eminent domain, and is being used for a different public purpose, such as the station grounds of a railroad company, which use would be interfered with or destroyed by such second appropriation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 107, 108.]

2. SAME—ACTION BY BOARD IN EXCESS OF POWERS—REVIEW BY COURTS.

When a local board or body attempts to exercise a power of eminent domain not conferred on it by the Legislature, its action is subject to review and control by the courts, state or federal.

In Equity. On demurrer to bill.

M. A. Low and Paul E. Walker, for complainant.
Garver & Larimer, for defendants.

POLLOCK, District Judge. The bill of complaint in this case avers complainant, in the operation of its road at the station of Rexford, Thomas county, this state, to be the owner and to maintain a depot, depot platform, main line, siding, passing tracks, station grounds, buildings, and other improvements, all acquired by it under the laws of the state, and all necessary for the transaction of its business as a common carrier for hire.

The bill further avers that defendants, acting under the authority of the county board of Thomas county, have laid out and are about to open for travel a highway 60 feet in width over and across the station grounds, platforms, tracks, and other improvements of the company located at said place, and that unless enjoined defendants will open said highway, and thus destroy and render useless said property of complainant at said place in the carrying out of the public use to which it is now devoted. To this bill defendants demur.

The theory of complainant, as made out by its bill, is that, as the property now sought to be appropriated to highway purposes is already appropriated to and necessary for the discharge of a public use, the same may not be taken for another wholly inconsistent public use, without such power has been expressly conferred upon defendants by legislative sanction, or by clear and necessary implication from legislative enactments; and that no such express or implied legislative authority is conferred upon defendants in this case.

The theory of defendants, as stated in the brief of their solicitors, is:

"(1) The laying out and opening of a public highway to accommodate public travel is the exercise of the political power of the state, exclusively within the control of the Legislature or such tribunals as it may vest with the power, and entirely beyond the control or supervision of the courts. (2) The

act which is sought to be enjoined by this suit is one within the rightful power of eminent domain, a sovereign right of the state, and cannot be interfered with by the federal courts so long as such power is being exercised within the limitations of authority granted by the Legislature."

In so far as the second proposition stated by defendants' solicitors is concerned, it must be conceded, if the insistence be that the authority to lay out and open this highway across and over the property of complainant in the manner attempted by defendants is found to be expressly granted by the Legislature of the state to defendants, or granted by necessary implication from legislative enactments found, then a federal court will not enjoin the exercise of such power. Neither will a state court, for the power of eminent domain is a sovereign power of the state. But if it be thought by solicitors for defendants that a federal court (the requisite jurisdictional facts being made to appear) may not interpose its mandate in any case in which a state court might rightfully interfere, merely because it is a federal court, then such contention cannot be allowed to prevail, for the judiciary act provides:

"The Circuit Courts of the United States shall have original cognizance concurrent with the courts of the several states of all suits of a civil nature at common law and in equity," etc.

The questions, therefore, arising for determination on this demurrer are: (1) Is the laying out of the public highway in question, under the laws of the state, the exercise of a purely political power, delegated to defendants to determine the necessity for its exercise and to enforce such determination, entirely uncontrolled by the courts? If so, the demurrer must be sustained. (2) If not, has the power here attempted to be exercised by defendants been granted by the Legislature to defendants in express terms, or by such clear implication as to preclude interference on the part of the courts? If so, the demurrer must be sustained.

It must be conceded, and is conceded, by the solicitors for complainant, that the laying out and opening of a highway for the purpose of public travel, under the power of eminent domain, is the exercise of a legislative power. It must also be conceded, and is conceded, that the Legislature cannot, by authorizing a railroad company to exercise the sovereign power of eminent domain in the acquisition of its right of way, station grounds, etc., deprive itself of the power of eminent domain to the extent that it will in future be precluded from again retaking the same property, once condemned and devoted to a public use, through its lawfully constituted agents, for another public use, although inconsistent with the former, should the necessity for such retaking arise. But such power of reappropriation, and the power to determine the necessity for it, must be either exercised by the Legislature itself, or granted to its lawfully constituted agent in clear and express terms or by necessary implication. The right to exercise such power of reappropriation by an agency of the state will not be presumed.

From an examination of many adjudicated cases touching this subject, I am of the opinion the following principles may be deduced: (1) When an attempt is made to exercise the power of eminent do-

main in the taking of private property devoted to a private use by a lawfully constituted agency of the state, on which the Legislature has conferred the general power of eminent domain, the question of the necessity for the taking is left to the decision of the agents exercising the sovereign power, and the existence or nonexistence of the necessity for the appropriation cannot be questioned in the courts. (2) When property once taken through the lawful exercise of the sovereign power of eminent domain is devoted to and necessary in the carrying out of such public use for which it was taken, is sought to be reappropriated by the sovereign power itself, or through its lawfully constituted agent, on which agent the express or necessarily implied power to so do has been conferred by the Legislature, the power to determine the necessity for the retaking rests in the sovereign or its agent, and the existence or nonexistence of the necessity will not be controlled by the courts. (3) Where an attempt is made by an agency of the state, on which agent there has been conferred only the general power of eminent domain, to appropriate property theretofore taken under such general power, which property at the time it is sought to be retaken is actually and necessarily used in carrying out the public purpose for which it was first taken, in such case the agency of the state attempting the exercise of the power is not the sole and exclusive judge of the necessity for the re-exercise of the power, and the courts are not in such case precluded from examining into the necessity for such retaking.

While there is an apparent conflict in the many adjudicated cases bearing on this subject, yet I am of the opinion their seeming inconsistencies may be reconciled, and that many of them, at least, may be brought into harmony with the above-stated principles, as the examination of a portion of the cases cited and relied upon by solicitors for defendants will show. For example, in the case of Com'rs of Wabaunsee Co. v. Bisby, 37 Kan. 253, 15 Pac. 241, there was an attempt to take private property devoted to a private use for a public highway. It was held the only question triable on appeal was the amount to be awarded the owner of the property. The same is true of Jockheck v. Com'rs of Shawnee Co., 53 Kan. 780, 37 Pac. 621. It was thought in that case the homestead character of the private property sought to be taken was material. The court held it was not. The same may be said of Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206; Shoemaker v. United States, 147 U. S. 282, 13 Sup. Ct. 361, 37 L. Ed. 170; Backus v. Fort St. Union Depot Co., 169 U. S. 557, 18 Sup. Ct. 445, 42 L. Ed. 853. In each of these cases the state, through its lawfully constituted agency, upon which it had conferred the power of eminent domain, sought to appropriate private property, devoted to a private use, to a public use. Irrigation Co. v. Klein, 63 Kan. 484, 65 Pac. 684, was precisely of the same character. The question there litigated was the right of the irrigation company to exercise the power of eminent domain at all, and the good faith of its attempted exercise. In C., B., U. P. R. Co. v. A., T. & S. F. R. Co., 28 Kan. 453, the single question presented was the constitutionality of that part of the statute allowing the defendant railroad company to enter upon the land condemned upon payment to the county treasurer of the amount of the award made by the

commissioners condemning the land. In K. C. R. Co. v. Com'rs of Jackson Co., 45 Kan. 716, 26 Pac. 394, the sole question litigated was the right of the railroad company to recover damages for the laying out and opening of a highway over its right of way and track. In Railway Co. v. Railway Co., 67 Kan. 569, 70 Pac. 939, 73 Pac. 899, the question now under consideration seems to have first received the attention of the Supreme Court of this state. In that case section 267 of Lewis on Eminent Domain (2d Ed.) vol. 1, is quoted with approval, as follows:

"The general authority to locate and construct a railroad from one point to another does not authorize the taking of property already devoted to railroad uses. In one of the cases cited the court says: 'A charter to build and maintain a railroad between certain points, without describing its course and direction, but leaving that to be determined and established by the corporation, as provided by the general laws, does not prima facie give any power to lay out the road over land already devoted to, and within the recorded location of, another railroad. It is not to be presumed that the Legislature intended to allow land thus devoted to one public use to be subjected to another, unless the authority is given in express words or by necessary implication. And such implication can only be found in the language of the act, or from the application of the act to the subject-matter; so that the railroad could not be laid, in whole or in part, by reasonable intendment, on any other line.' The Legislature may authorize one railroad to take the property of another, and, as indicated in the opinion just quoted, this may be done by express words or by necessary implication. These general rules are undoubted, but their application to particular cases is often attended with much difficulty, as will appear from the following sections."

On rehearing, it is said by Burch, Justice, delivering the opinion:

"The record, therefore, fairly presents a case of an attempted condemnation by one railroad company, under the general statutes of eminent domain, of land owned by another railroad company already in actual and necessary use for railroad purposes.

"Under the authority of the text quoted in the former opinion (Lewis, Em. Dom. [2d Ed.] § 267), and the adjudicated cases upon which that text is based, this cannot be done except by express statutory warrant, or by necessary implication from the language of the statutes, when an effort to apply the law is made. The latest decisions of the courts support this doctrine."

—Citing Western Union Tel. Co. v. Pennsylvania R. Co. (C. C.) 120 Fed. 362; Western Union Telegraph Co. v. Pennsylvania R. Co., 123 Fed. 33, 59 C. C. A. 113; Indianapolis & V. R. Co. v. Indianapolis & M. R. Transit Co. (Ind. App.) 67 N. E. 1013.

The courts of other states have had occasion to pass upon the question now under consideration. In Albany Northern Railroad Company v. Brownell, 24 N. Y. 345, it is said:

"The question is then presented whether, when a railroad company has acquired the title of a piece of land for the site of a building necessary for its business, the local authorities can occupy the ground for a highway, and thus prevent the company from erecting the proposed building. I am of opinion that it cannot be lawfully done."

In Matter of Boston & Albany R. R. Co., 53 N. Y. 574, it is said:

"The sole question, then, is whether the Legislature has conferred upon the applicant the power to enter upon and take possession of property already held and dedicated by authority of law to one public use for another and entirely different use, also declared to be public. The authority must be sought in the statutes, by which all the powers which railroad corporations

may exercise over property without the consent of the owners are conferred, and, if not found, then it does not exist. It must be expressly conferred —that is, in direct terms or by necessary implication—and the implication does not arise if the powers expressly conferred can, by reasonable intendment, be exercised without the appropriation of property already actually held and used for another public use."

Again, in Matter of City of Buffalo, 68 N. Y. 167, Folger, Justice, rendering the opinion, said:

"In determining whether a power generally given is meant to have operation upon lands already devoted by legislative authority to a public purpose, it is proper to consider the nature of the prior public work, the public use to which it is applied, the extent to which that use would be impaired or diminished by the taking of such part of the land as may be demanded for the subsequent public use. If both uses may not stand together, with some tolerable interference which may be compensated for by damages paid; if the latter use, when exercised, must supersede the former—it is not to be implied from a general power given, without having in view a then existing and particular need therefor, that the Legislature meant to subject lands devoted to a public use already in exercise to one which might thereafter arise. A legislative intent that there should be such an effect will not be inferred from a gift of power made in general terms. To defeat the attainment of an important public purpose to which lands have already been subjected, the legislative intent must unequivocally appear. If an implication is to be relied upon, it must appear from the face of the enactment, or from the application of it to the particular subject-matter of it, so that by reasonable intendment some especial object sought to be attained by the exercise of the power granted could not be reached in any other place or manner."

In Prospect Park & C. I. R. R. Co. v. Williamson et al., 91 N. Y. 552, Mr. Justice Rapallo, rendering the opinion, said:

"These lands having already been lawfully appropriated, under the right of eminent domain, to a public purpose, express and direct legislative authority is necessary to justify their appropriation by proceedings in invitum to a different public purpose, and that general laws authorizing the laying out of highways are not sufficient. In respect to the crossing of railroad tracks by highways, such express authority is contained in the general railroad act, but this authority does not extend to lands taken for depot purposes."

In Jeduthun Wellington et al., Petitioners, etc., 16 Pick. (Mass.) 87, 26 Am. Dec. 631, the Supreme Court of Massachusetts held:

"We think, therefore, that the rule applies to this case, that where the Legislature have appropriated any territory to a specific public use, and the laying a highway over it would be inconsistent with such public use, and contrary to the terms and provisions of such appropriation, the general power of the county commissioners to lay out highways, so far as such appropriated territory is concerned, is suspended and superseded."

In Proprietors of Locks & Canals v. City of Lowell, 7 Gray, 223, the Supreme Court of Massachusetts held:

"It is undoubtedly true that land or other property which has once, in conformity with the provisions of the Constitution, been devoted to the public use, may afterwards in like manner be again taken and appropriated to the public service under a subsequent statute duly enacted, if such a purpose is expressly, or by unavoidable implication, authorized by its provisions; for, in every exigency that can from time to time occur, the right to take private property for public use must remain paramount in the state, or its power to promote the general welfare would be paralyzed and destroyed. It belongs to the Legislature to determine when these exigencies arise, and upon what occasions this extreme right of the government shall be exer-

cised and enforced. Thus, a portion of land laid out for a public common may by special provision of law be converted into a public highway; and again, a portion or the whole of a public highway may be appropriated to the service of a private corporation empowered to construct, and required to maintain for the public use, an iron railway. Wellington, Petitioners, 16 Pick. (Mass.) 103, 26 Am. Dec. 631; Springfield v. Connecticut River Railroad, 4 Cush. (Mass.) 72. These cases afford illustrations of the general power of the Legislature to devote to another and new service, for the use and accommodation of the public, any species of private property, although it may have before, for a similar purpose, but in a different manner, been specially set apart and appropriated. But if such an appropriation has once been made, the property cannot afterwards be interfered with, or the right of holding and enjoying it in that definite manner be interrupted or disturbed, except under the provisions of some subsequent statute, expressly or by necessary implication authorizing its subjection to public service in another and different manner. This principle, applied to the present case, is decisive of the rights of the parties in relation to the point in controversy between them. The plaintiffs have under their charter already acquired the exclusive right to the possession and occupation of the lands upon and through which the defendants have caused their drains to be laid and constructed. But the defendants contend that this right has been superseded by the same authority from which the grant of it was derived. This undoubtedly could have been done, for it is, as has already been shown, clearly competent for the Legislature, in order to meet a pressing emergency and to accomplish some object of immediate public necessity or importance, to determine that a new appropriation of these lands ought to be allowed. If it should be found essential or reasonably necessary for the public good, as, for instance, to preserve or promote the health of the inhabitants of a city rapidly increasing in population, to take the lands and use the canal of the plaintiffs for the purpose of drainage, such an appropriation might undoubtedly be made under statutes containing suitable provisions, and conferring the requisite authority. But no such necessity is declared, nor is any such right given to the defendants by any of the provisions of their city charter. The city council are, indeed, therein allowed, by a provision expressed in very general terms, to lay down drains and sewers through streets and private lands; but in this there is no such directness and particularity as to import that a new appropriation to the public use of land which had already been lawfully taken, and was still held and devoted by the plaintiffs to another public service, was intended by, or even at all in the contemplation of, the Legislature."

In rendering the opinion in Boston & Maine R. R. v. Lowell & Lawrence R. R. Co., 124 Mass. 368, Mr. Justice Gray said:

"The general principle is well settled, and has been applied in a great variety of cases, that land already legally appropriated to a public use is not to be afterwards taken for a like use, unless the intention of the Legislature that it should be so taken has been manifested in express terms or by necessary implication. For instance, a highway cannot be laid out across a navigable river without authority of the Legislature, and such authority is not to be implied from a general statute empowering courts of sessions or county commissioners to lay out highways. Commonwealth v. Coombs, 2 Mass. 489; Commonwealth v. Roxbury, 9 Gray (Mass.) 451, 494, and other cases there cited. In Commonwealth v. Coombs, Chief Justice Parsons said: 'The statute gives a general authority to the sessions to lay out highways; but the statute must have a reasonable construction. This authority, therefore, cannot be extended to the laying out of a highway over a navigable river, whether the water be fresh or salt, so that the river may be obstructed by a bridge. A navigable river is, of common right, a public highway, and a general authority to lay out a new highway must not be so extended as to give a power to obstruct an open highway already in the use of the public.'"

In City of Seymour et al. v. Jeffersonville, M. & I. R. Co. et al. (Ind.) 26 N. E. 188, the Supreme Court of Indiana held:

"We do not doubt the power of the Legislature to authorize the condemnation of land owned and occupied by a railroad company. The question here, however, is not as to the existence of that power in the Legislature, but the question is as to whether that power has been exercised. It is settled beyond controversy that land already appropriated to a public use cannot be appropriated to another public use unless the statute clearly confers authority to make a second seizure."

In Milwaukee & St. P. Ry. Co. v. City of Faribault, 23 Minn. 167, the court held:

"The rule is well settled that in cases of this kind the legislative intent must be made to appear by express words or by necessary implication, * * * and such implication never arises except as a necessary condition to the beneficial enjoyment and efficient exercise of the power expressly granted, and then only to the extent of the necessity. Hickok v. Hine, 23 Ohio St. 523, 13 Am. Rep. 255. That the general power in question may be beneficially enjoyed and efficiently exercised, without any such interference with plaintiff's exclusive easement in its depot grounds as practically to destroy its value, seems too plain a proposition seriously to be controverted. It cannot be presumed that the Legislature, in conferring this general power, ever contemplated its exercise in such a way as would result in the destruction of the site for the Deaf and Dumb Asylum, the removal of county buildings located at Faribault, or the abandonment of the depot grounds of the plaintiff; the property in each of these cases being specifically appropriated to an important public use by express sanction of law. It is claimed by defendant that the city council in this case was the sole and exclusive judge as to the public necessity and propriety of laying out the proposed street, on the ground that the necessity and expediency of laying out highways is exclusively a legislative, and not a judicial, question. This is undoubtedly a correct rule as applied to the Legislature itself, and also to a municipal body when acting within the conceded limits of its delegated powers. But when, as in this case, the jurisdiction of the inferior tribunal over the particular subject-matter depends, not upon an express grant of power, but upon the existence of an alleged necessity from which the disputed power is to be implied, the decision of such tribunal upon the existence of the necessity is neither final nor conclusive upon the courts."

In St. Paul Union Depot Co. v. City of St. Paul, 30 Minn. 359, 15 N. W. 684, it is held:

"It is also the general rule that a general statutory authority in a charter cannot be presumed to authorize the taking of land already lawfully appropriated and needed as a site for a depot and its necessary appendages, or car shops, etc., or land within the lines of the location of a railroad and parallel with the track, for the purposes of a street or highway, for the reason that it has already been set apart for a specific public use under the sanction of law, and it cannot, therefore, be diverted to another public purpose, except the power be expressly given or necessarily implied. And there can ordinarily be no necessary implications of the existence of such authority from the grant of a general statutory power to lay out streets, because there is ample authority to appropriate other lands, and especially where, as in this case, the public necessity for the particular street is not demonstrated."

In Armiston & C. R. Co. v. Jacksonville, G. & A. R. Co. (Ala.) 2 South. 710, the Supreme Court of Alabama held:

"By what power can this supreme function of government be exercised? Not under the general power to take private property for public use,

in the exercise of a jurisdiction conferred on the courts of the country. Such power does not extend to property already dedicated to, or condemned, or acquired and held by, another corporation for public use, unless it is expressly given by the statute conferring the jurisdiction. Lands once taken for a public use, pursuant to law, under the right of eminent domain, cannot, under general laws, and without special authority from the Legislature, be appropriated by proceedings in invitum to a different public use. It requires legislative authority for destroying a corporate franchise or corporate rights, by merging them in another, deemed more beneficial to the public."

In Baltimore & O. & C. R. Co. v. North (Ind.) 3 N. E. 144, the Supreme Court of Indiana held:

"The law seems to be well settled that lands once taken for a public use cannot, under general laws, without an express act of the Legislature for that purpose, be appropriated by proceedings in invitum to a different public use. The Legislature, as the supreme and sovereign power of the state, may doubtless interfere with property held by a corporation for one purpose and apply it to another; but the legislative intention so to do must be stated in clear and express terms, or must appear from necessary implication."

In City of Ft. Wayne v. Lake Shore & M. S. Ry. Co. (Ind. Sup.) 32 N. E. 215, 18 L. R. A. 367, 32 Am. St. Rep. 277, the Supreme Court of Indiana held:

"While the construction of a street or other public highway across a railroad track is generally attended with some inconvenience to the company, yet it is not ordinarily inconsistent with the use of the railroad for the purposes for which it was constructed. But even this rule, which allows the construction of streets and other public highways across railroad tracks, has its limitations. They cannot be so constructed where by doing so the railroad would be unable to use its tracks at the point of the crossing for the purposes for which they were constructed; in other words, the crossing must occur at a point where the use of the highway or street will not deprive the railroad of the use of its tracks."

While it cannot be doubted under the power of eminent domain in this state, a highway may be laid out and opened for travel over the right of way and track of a railway company, just compensation being paid to the company; yet, under the statutory provisions of this state, and in the light of the foregoing adjudicated cases, I am of the opinion where it is sought, as averred in the bill in this case, to lay out and open a highway for travel over and across property already appropriated and necessary to a public use, such as the depot platform, yards, station grounds, side and passing tracks of a railway company at its station, under the general power of eminent domain, where such taking will destroy or render useless such property for the public purpose to which it is dedicated, a court of equity is not precluded from an examination into the necessity of such reappropriation. And further, that there is no such express or necessarily implied authority conferred upon the defendants in this case as will authorize the defendants, by the attempted exercise of such power, to conclude the question of such necessity from examination in the courts.

Therefore, the demurrer to the bill is overruled.