## CITY OF NORTON v. LOWDEN et al.
### No. 1405.

Circuit Court of Appeals, Tenth Circuit.
July 13, 1936.

Robert W. Hemphill and W. E. Mahin, both of Norton, Kan. (D. P. Moyers, of Norton, Kan., on the brief), for appellant.

John E. DuMars, of Topeka, Kan. (Luther Burns, of Topeka, Kan., on the brief), for appellees.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

This controversy arises from an effort of the City of Norton to open a street at grade across the station grounds and yards of the Rock Island Railway.

Appellant here, defendant below, is a city of the second class with about 3000 people. First Street runs north and south, and the tracks of appellees run east and west. The year the railway built into the town—1887—First Street was vacated for one block where it crossed appellees' tracks, doubtless to provide space for station grounds, sidetracks, water cranes, and the like. The title to the vacated street reverted to the railway which owned the blocks on either side. R.S.Kan.1923, § 14—423.

Cities of the second class are authorized to open and extend streets, but before doing so "the city counsel * * * shall proceed to condemn the necessary lands as provided by law." Section 14—423, supra. The section governing condemnation proceedings provides for the appointment of three commissioners by the state district court whose duty it is, after notice and upon view, to "appraise the value of the lands taken and assess the other damages done to the owners of such property, respectively, by such appropriations." Sections 26—201, 26—202. Except as hereafter limited, these statutes authorize appellant to open or extend streets across a railway right of way. City of Wichita v. Wichita Union Terminal R. Co., 127 Kan. 855, 275 P. 171; Denver & R. G. R. R. Co. v. Denver, 250 U.S. 241, 39 S.Ct. 450, 63 L.Ed. 958; Missouri, K. & T. Ry. Co. v.

Oklahoma, 271 U.S. 303, 46 S.Ct. 517, 70 L.Ed. 957.

In 1935 the city proposed to open First Street across the tracks, and procured the appointment of commissioners to assess the damage. Before the commissioners could meet, this action was brought to enjoin the proceedings. After a trial a decree was entered perpetually enjoining appellant from "appraising, valuing or condemning the property of the plaintiffs for any purpose and from extending or opening, or undertaking to extend or open First Avenue in the City of Norton through, over and across the property of the plaintiffs." This appeal is from that decree.

■■■ While a city has plenary power over streets and alleys, such power may not be exercised arbitrarily, capriciously, or in bad faith. City of Emporia v. Atchison, T. & S. F. Railway Co., 94 Kan. 718, 147 P. 1095; Denver & R. G. R. R. Co. v. Denver, supra; Missouri, K. & T. Ry. Co. v. Oklahoma, supra. Whether the needs of the city make desirable the opening of this street is a question for the determination of the legislative body of the city. United States v. Threlkeld (C.C.A.10) 72 F.(2d) 464; City of Emporia v. Atchison, T. & S. F. Railway Co., 88 Kan. 611, 129 P. 161; Fairchild v. City of Holton, 101 Kan. 330, 333, 166 P. 503; Decker v. City of Wichita, 109 Kan. 796, 799, 202 P. 89; City of Emporia v. Humphrey, 132 Kan. 682, 297 P. 712. The bill alleges that the proceeding is in bad faith in that its purpose is to prevent that part of First Street south of the tracks from being used for a building which the Seymour Packing Company proposes to erect thereon. If that were in the mind of the council, it is no evidence of bad faith; quite the contrary, it is evidence of ordinary prudence and foresight. If the need to open First Street were not immediately urgent, the increase in traffic and the growth of the town might well require its opening in the not distant future. The construction of a large building in the vacated street would make the opening of the street in the future very expensive if not prohibitive. It is no evidence of bad faith or arbitrary conduct that the city authorities decided to open the street now at nominal cost rather than wait a few years and open it at great cost. The trial court made no finding of bad faith on this account, and the proof warrants no such finding by us. True, the court did find that the traffic requirements were not such as to justify opening the street; but the physical facts as well as the opinion evidence disclose clearly that the desirability of opening the street is at least fairly debatable. That being so, the decision is for the city council and not the court. The decree cannot rest on the ground that the action of the city is arbitrary or capricious or in bad faith.

The decree finds its main support in the finding that part of the property sought to be condemned is now devoted to a public use, and that to subject it to the proposed use would substantially destroy or materially interfere with the present public use. The trial court found:

"That if the property of plaintiff should be condemned and First Street projected across the tracks, grounds and premises of the plaintiffs, the said property would be greatly and irreparably damaged and injured, and the use thereof seriously and permanently impaired and would result in the obstruction of, interference with, and delay to freight and passenger trains in interstate commerce."

■■■ The power to take private property for public use inheres in the sovereign, is essential to the public welfare, and can neither be contracted away nor surrendered. It applies to property already devoted to one public use. Georgia v. Chattanooga, 264 U.S. 472, 480, 44 S.Ct. 369, 68 L.Ed. 796. The sovereign may condemn a right of way for streets across a railway right of way. Chicago, B. & Q. R. Co. v. Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979; City of Osceola v. Chicago, B. & Q. R. Co. (C.C.A.) 196 F. 777. However, statutes delegating to agencies of the state—municipalities, railroads, etc.,—the right of eminent domain in general terms, do not authorize such agencies to condemn property already devoted to public use, if such condemnation will substantially destroy or materially interfere with the present public use. Power to destroy or materially interfere with an existing public use must be found in a specific authorization of the legislature.[1] On the other hand, if the second public use does not substantially destroy or materially interfere with the existing public use, property

---

[1] Many states have statutes authorizing such condemnation where the second use is found to be more essential to the public welfare than the first. And, as in all other cases, specific power may be found by necessary implication.

may be condemned for the second public use under a statute conferring the power of eminent domain in general terms. The authorities are numerous. Many years ago Judge Pollock found this to be the law in Kansas, which he expounded in an able and exhaustive opinion, frequently cited and followed. Chicago, R. I. & P. Ry. Co. v. Williams (C.C.) 148 F. 442. Comprehensive discussions may also be found in St. Louis & S. F. R. Co. v. City of Tulsa (D.C.) 213 F. 87, and Chicago, M. & St. P. Ry. Co. v. Incorporated T. of Lost Nation (D.C.) 237 F. 709. These cases denied the power of a city, under a general statute, to open streets through the station grounds and yards of a railway. The Supreme Court of Kansas has announced the same rule, Railway Co. v. Kansas City & M. O. Railway Co., 67 Kan. 569, 70 P. 939, 73 P. 899, as has the Court of Appeals of New York in an opinion by Mr. Justice Cardozo, In re Newport Ave., 218 N.Y. 274, 112 N.E. 911, and our own court, Clarke v. Boysen, 39 F.(2d) 800, certiorari denied 282 U.S. 869, 51 S.Ct. 75, 75 L.Ed. 768. For instances where it has been held that the second use did not materially interfere with the first, see Pacific P. Telegraph Cable Co. v. Oregon & C. R. Co. (C.C.) 163 F. 967, and Oregon Short Line R. Co. v. Postal Telegraph Cable Co. (C.C.A.) 111 F. 842, 847. These principles do no more than apply common sense to the problem: a city should have the right, without express legislative authority, to open a street across a single track of railway where it does not substantially interfere with the railway use; but it should not have the power, without such express grant from the sovereign, to open a street through a station house.

■ The city here is acting under a grant of general power; the trial court has found, after hearing conflicting opinion evidence as to the necessity of opening the street, that such second use will materially interfere with the railway use. The question remains whether, giving due weight to the conclusions of the trial court, we should say that such finding is clearly wrong. Laying to one side the conflicting opinion evidence, many facts are undisputed. Four passenger trains a day—eight in better times—stop at this station. The depot platform extends across the street sought to be condemned—seven feet of concrete and the rest cinders and ballast. Pullman passengers alight from and board west bound trains from this platform. It is dangerous for passengers to alight where there is no platform. A water crane is so located that the locomotive on east bound trains would extend into the street. Passenger trains each way would block this street while making their station stops. Five regular freight trains are operated daily. The yards for their necessary work cross this proposed street intersection, and switching cars and street intersections are a dangerous combination. A Kansas statute, R.S.Kan.1923, § 66—273, and customarily city ordinances, Walker v. Missouri Pac. Railway Co., 95 Kan. 702, 149 P. 677, prohibit trains from blocking crossings more than a few minutes. If this street is opened at grade, many trains must be cut, at a loss of time of fifteen minutes each and a consequent disruption of schedules and delays difficult to appraise in money. We conclude that the proof sustains the finding that the proposed grade crossing over the station grounds and yards of plaintiffs would materially interfere with the present public use of the surface of the ground now occupied by the platform and tracks of plaintiffs.

■ Property owned by a public service company, but which is not presently devoted to a public use and where there is no reasonable probability that it will be so devoted in the near future, may be condemned under a statute conferring the right of eminent domain in general terms. The Supreme Court of Kansas so held in Railway Co. v. Kansas City & M. O. Railway Co., 67 Kan. 569, 70 P. 939, although on rehearing, 67 Kan. 580, 73 P. 899, it was found that the property sought to be appropriated was in actual use. See, to same effect, Annotation, 12 A.L.R. 1502.

While appellees have title to a full block on First Street vacated, only the surface of that part now occupied by its platform and tracks is devoted to public use. That part of First Street south of the tracks is not now devoted to public use, and appellees have no present intention to put it to such use, for they propose to permit a packing company to erect a permanent structure thereon. That part north of the tracks has been paved by the railway and is used by its patrons as a street.

Furthermore, the construction by the city of an overpass or underpass would not interfere with the use to which appellees are devoting the surface.

■ The decree below will be modified so that the appellant is enjoined only from

pursuing its present effort to condemn the surface of the ground now occupied by appellees' tracks and platform. The decree should make it clear that appellees' present public use includes subjacent and lateral support for their structures, together with reasonable means of ingress and egress thereto; that appellant is not enjoined from condemning that part not now occupied, nor from opening the street by a thoroughfare over or under appellees' tracks and platform. Each party will pay its own costs in this court.

Modified.