Cornwall v. Lou. & Nash. R. R. Co.

CASE 13—PETITION EQUITY—MARCH 6.

# Cornwall v. Lou. & Nash. R. R. Co.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. RAILROADS—CONDEMNATION OF STREET.—In the absence of an *express* statute to that effect, a railroad company cannot have condemned and appropriated to its use *ad libitum* land already dedicated to the public for streets, and unless such precise right be shown to exist, not only the municipal corporation, but the owner of the fee, may have an injunction to prevent such condemnation, upon the ground that the use of the streets for such unauthorized purpose is a special injury to him.

2. ADVERSE POSSESSION OF STREET.—If a person has been permitted to remain in the continued actual adverse possession of a public street or part of a street, as embraced within his inclosure, for a period of fifteen years, such person will be vested thereby with the complete title to the ground so actually occupied by him. And while under section 1 of article 5, chapter 71, of the General Statutes, the possession does not become adverse until the municipal corporation has been notified that it is so intended, this case is to be determined by the law as it existed prior to the General Statutes, as the street in contest was inclosed in 1854, and had been in the continued actual adverse possession of the present claimant for more than thirty years at the time the cross-petition was filed by the railroad company in this case seeking to have the street opened.

3. CONDEMNATION OF PRIVATE PROPERTY.—While the power of the Legislature to condemn private property for the use of a railroad can not be impaired or defeated by any private contract between the owner of the property and the railroad company, yet where the owner has *ceded* property for the use of the company, upon the express condition that no more of his property shall be taken for the purposes of the railroad, the company will not be allowed to condemn additional property, under authority given by the Legislature, without making compensation for that originally ceded to it by the owner, and where the owner seeks in a court of equity to enjoin the company from condemning additional property, relying upon his contract with the company, the court will place the company upon the terms of first paying for the land which it has already gotten for no other consideration than its agreement not to take any more of the owner's property.

B. F. BUCKNER & ARTHUR WALLACE for APPELLANT.

1. The right to condemn property necessary for the construction of a rail-

Cornwall v. Lou. & Nash. R. R. Co.

road exists only by virtue of express grant, and when such right is granted and passed to another railroad corporation by legislative act, the grantee company takes the right, subject to and with notice of all the limitations and restrictions imposed upon the first corporation. (White & Tudor's Leading Cases, vol. 2, p. 189.)

2. The power of a court of equity to restrain by injunction the exercise of the right of eminent domain by a corporation, when there is no express grant therefor, is unquestioned. (Frewin v. Lewis, 4 Mylne & Craig, 255; The Mayor of Liverpool v. Chooley Water-works Co., 2 De Gex, M. & G., 851; Kerr on Injunctions, 296.)

3. The right to exercise the powers of eminent domain can not be made the subject of conveyance by one railroad corporation to another. (Atkinson v. The Marietta R. R. Co., 15 Ohio St., 36; Thomas v. R. R. Co., 101 U. S., 82; Mahoney v. Spring Valley Water Co., 52 Cal., 161; Davis v. Old Colony R. R. Co., 131 Mass., 258.)

4. One exercise of the right of eminent domain under legislative grant exhausts it. (Mills on Eminent Domain, sec. 58; Morehead v. Little Miami R. R. Co., 17 Ohio, 352; Mason v. Brooklyn & Newton R. R. Co., 35 Barb., 373; Birmingham v. Agricultural Branch R. R. Co., 1 Ala., 317.)

5. The railroad company having accepted a grant of the right of way without consideration, and upon condition that no more land was to be taken, cannot condemn more without making compensation for the whole.

WM. LINDSAY, BARNETT, NOBLE & BARNETT FOR APPELLEE.

1. The power of eminent domain is one which the State holds in trust for the general public. It cannot abandon, but may delegate the power to corporations or individuals for like public purposes. Such delegated powers are held in trust, and cannot be bargained away or abandoned. (S. Canal Co. v. Boham, 9 Watts & S., 27; Arthur v. R. R. Co., 9 Smeade & M., 394; Stewart v. Jones, 40 Mo., 140; Halstead v. Mayor, &c., 3 N. Y., 433; Alexander v. Fredricksburg, 75 Va., 780; Brinner v. Boston, 102 Mass., 19; Mills on Eminent Domain, S. 40.)

2. A valid contract, even, will not be specifically enforced in equity if the same contravene public policy, or has been made by a corporation *ultra vires*, or when the right is not clear. (Helm v. E. & P. R. R. Co., 8 Bush.)

3. Limitation with alleged adverse possession is no defense if the possession has not been exclusive, or affects only a mere easement, or is accompanied with constant admissions of right in the real owner. (Tyler on Ejectments, part 3, pp. 79, 860-1, 877-9, 883-4, 885-6-7.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

In 1870 the city of Louisville made a contract with the Louisville, Cincinnati and Lexington Railroad Company, then owning the right of way and having its track on Jefferson street, by which the company was, upon specified conditions, given the right to construct a track from the head of that street southward to a point of connection with the line of the Louisville and Nashville Railroad Company. The city further agreed to construct, at its own cost, by January 1, 1875, a road-bed suitable for a first-class double track railroad, north of Main street, by a route indicated in the contract, which, for some distance, was along the bed of Beargrass creek, and to convey to the company in fee-simple the right of way, road-bed and grounds of sufficient dimension for the purpose contemplated by the parties. And in consideration thereof, the company, besides other stipulations that need not be mentioned, agreed, upon completion of the work, to remove its track from Jefferson street and relinquish whatever rights and franchises it owned thereon, west of its grounds at the head of that street, and to convey to the city, at a valuation to be fixed, all its grounds and improvements between Jefferson, Green, Brook and Floyd streets. The Louisville and Nashville Railroad Company was also a party to that contract, but as the portion relating to it has no bearing on the questions before us, it need not be mentioned.

In pursuance of that contract the city proceeded to obtain the right of way along the proposed new route, and for that purpose instituted, under legislative authority, a proceeding against Hall and others, in the

Common Pleas Court, for the condemnation of such
land needed for the road-bed as the owners failed or
refused to cede, to which Cornwall & Brother, under
whom the appellants claim, were made parties defend-
ants. During the pendency of that proceeding one
Roberts, a member of the city council, and probably
induced by his desire for the removal of the railroad
track from Jefferson street, applied to Cornwall &
Brother to give the right of way over their land for the
use of the company. And in answer to his application
they delivered to him the following written communica-
tion :

"LOUISVILLE, KY., February 23, 1872.

"*Mr. D. F. Roberts*—

"DEAR SIR: We say, in reply to your request, that
we shall grant the right of way to the Louisville, Cin-
cinnati and Lexington Railroad Company, to use from
the center of the creek, eighty feet south of it, for the
base of the fill, the road being in the center of the
creek ; that we agree to that proposal provided the
company do not take possession of more than twenty
feet inside the fence as it now stands ; and we consent
that, if necessary, their embankment may come fur-
ther over or inside our fence more than twenty feet, we
being allowed to run our inclosure or building up to
within twenty feet of where the fence now stands.

"Yours truly,

"CORNWALL & BROTHER."

That communication was by the city attorney filed
with and as part of an amended petition in the pro-
ceeding referred to, and was made the ground of an
uncontroverted allegation that Cornwall & Brother

had ceded the right of way over their land; and as a consequence, the jury awarded them nominal damages merely.

Although the new road-bed was, according to the contract of 1870, made by the city of Louisville, the Louisville, Cincinnati and Lexington Railroad Company never occupied or accepted it, nor removed its track from Jefferson street. But in an action instituted for the benefit of its creditors, its property rights and franchises were in 1877 sold under judgment of court, and purchased by certain persons, who organized a company with the name the Louisville, Cincinnati and Lexington Rail*way* Company; and to that company, which had thus acquired the property rights and franchises of the other, the city of Louisville, by its mayor, under an act of the Legislature and in accordance with an ordinance of the city council, May 6, 1880, made a deed by which it conveyed the right of way, so far as it owned the same, along the route set out and designated on the several maps filed in cases in the Jefferson Court of Common Pleas, "The City of Louisville v. Hall" being referred to as one of them, and in the several verdicts and judgments in those cases, together with the road-bed, bridges, and right to operate a railway over the same. A short time after the execution of that deed, appellee, the Louisville and Nashville Railroad Company, acquired possession of the new road-bed, and has had it ever since.

This action was brought by appellants in 1887, and in their petition they stated appellee had instituted a proceeding in the Jefferson County Court to have condemned for its use a part of their land adjacent and in

Cornwall v. Lou. & Nash. R. R. Co.

addition to what they ceded in 1872. The relief prayed for is a specific execution of the contract between them and the city of Louisville, evidenced by the proposition made through Roberts and accepted, and an injunction restraining further proceeding by appellee to have their land condemned for its use.

Besides the defenses to be hereafter referred to, appellee alleged in its answer the land in contest was not rightfully in the possession of appellants, but had been dedicated for and was public streets, and asked that the city of Louisville, made defendant to its cross-petition, be compelled to cause them opened. No answer was filed by the city of Louisville, nor claim made by it to the land in dispute.

By the judgment rendered the injunction was denied, and the petition and cross-petition were each dismissed, of which both parties complain. The question of title raised by the cross-petition will be first considered.

We can not, however, readily see how a judgment finding the land in question to be public streets, and ordering it opened as such, would benefit appellee. For while its statutory right to cause to be condemned for its use additional private property has not been controverted in their pleadings by appellants, it does not follow, nor in the absence of an express statute to that effect can it be assumed, that appellee may have condemned and appropriated to its use *ad libitum* land already dedicated to the public for streets. And unless such precise right be shown to exist, not only the municipal corporation, but the owner of the fee, may have an injunction on the ground the use of streets for such unauthorized purpose is a special injury to him. (High on Injunctions, sec. 408.)

As this record appears to us, we therefore think the effect of a judgment in favor of the city, on that issue, would be to. prevent the occupation of the land by appellee.

The two streets, which it is claimed are unlawfully occupied by appellants, are Water and Perry. By a deed made to Cornwall & Brother in 1854, under which appellants claim, the lot conveyed is described as bounded on one side by Perry street, and on the north "fronting on Beargrass creek or Water street when laid out."

The evidence shows that both those streets were intended by the owner of the tract of land, of which the lot subsequently purchased by Cornwall & Brother is a part, to be dedicated to the use of the public, and were designated and called for in his deeds to purchasers of lots adjacent to them. But in 1854 Cornwall & Brother extended their inclosure to the creek, including the portion of Water street between it and the north side of their lot, and, in conjunction with the gas company, inclosed Perry street on the east side. And that inclosure continued until their fence was, about 1875, moved back to the line of that portion ceded to the city of Louisville in 1872.

By section 1, article 5, chapter 71, General Statutes, it is provided that limitation shall not begin to run, in respect to an action to recover a street, until the municipal corporation has been notified in writing by the party in possession or about to take possession, to the effect that such possession will be adverse to the right or title of the town or city. But in the case of Dudley v. Trustees of Frankfort, 12 B. M., 614,

decided in 1851, by which the question before us must be determined, it was held that if a person has been permitted to remain in the continued adverse actual possession of a public street, or part of a street, as embraced within his inclosure, for a period of twenty, now fifteen years, such person will be vested thereby with the complete title to the ground so actually occupied by him.

The possession of the ground here claimed to be streets had been held by Cornwall & Brother and appellants, by actual inclosure, continuously for more than thirty years, when the cross-petition of appellee was filed in this case, and we think there could be no more satisfactory evidence it was held adversely than is furnished by the proceeding of the City of Louisville v. Hall, &c., wherein appellants claimed, and the city admitted, the title to be in them.

The chancellor did not, therefore, err in dismissing the cross-petition. Nor need there be any confusion as to the location of the line dividing the portion of their land ceded from that reserved by appellants in 1872. For it is clearly proved that the fence was moved back to the place on the embankment that had been indicated in the communication to Roberts, and evidently agreed by the city of Louisville as the boundary line.

As the alleged contract between Cornwall & Brother and the city of Louisville, is made the sole ground of the relief asked in this case, our inquiry on the main issue must be confined to the meaning and effect of that contract.

It seems to us clear that it was intended by Corn-

wall & Brother, for their proposition embodied in the
communication to Roberts can not be construed other-
wise, and was so understood and accepted by the city
of Louisville, acting through the city attorney, that
a certain designated quantity of their land was ceded
to the city of Louisville for the use of the Louisville,
Cincinnati and Lexington Railroad Company upon the
express condition no more was ever to be taken against
their .consent for railroad purposes.

It is equally clear that if appellee is now permitted
to have condemned for its use additional land of appel-
lants, without any condition or restriction other than
first paying therefor, not only will that contract be
violated, but there will be the further result of giv-
ing to appellee the use of that already in its posses-
sion without any compensation whatever to the owners.

But under the right of eminent domain, reserved by
every sovereign State, and nowhere more distinctly
recognized as existing than by this court, it is in the
power of the Legislature to condemn the property of
the appellants for the use of appellee, which has been
settled to be a public use, and this power can not be
impaired or defeated by any private contract between
a railroad company and the owner of property that
the Legislature may at any subsequent time deem
necessary for public use.

We have thus presented a rather anomalous ques-
tion for our decision. Appellee, under a statutory
right, the existence of which is not denied by appel-
lants, and which the Legislature had the unquestion-
able power to give, is proceeding to exercise that right
in a way that involves a violation of a contract, con-

nected with the land about to be taken, between appellants and the city of Louisville, under which it holds and enjoys other land of appellants obtained in virtue of and upon conditions contained in it.

Appellants will not, as urged by counsel, have a right of action against the city of Louisville, for the contract has not been violated by it, nor does appellee claim the right to take from appellants the additional land by reason of any authority conferred or stipulation contained in that contract, but solely under the statutory right independent of and beyond any thing contained in the contract.

But as the unqualified exercise of that right necessarily involves a violation of a constitutional right that every one has to compensation for property taken for public use, is it not in the power and the duty of a court of equity, in a case like this, to prescribe such terms as will do justice and assure to the property-owner his right to compensation? If no such power resides anywhere, then we have a plain violation of an express provision of the Constitution, which, though indirect, is just as palpable and injurious as if done directly.

We are not to assume that the Legislature intended to confer upon appellee the right to thus arbitrarily violate a contract made by its vendor, and of which the recitals in the deeds show it had notice, and, as the result of such violation, appropriate and enjoy private property without compensation.

While, then, we think, as the record stands, the chancellor had no right to enjoin the proceeding in the county court absolutely, the power does exist, and

we think it should be exercised, to put appellee upon the terms of first paying for the land of appellants ceded under the contract of 1872.

The judgment is, therefore, reversed on the appeal, and affirmed on the cross-appeal, with directions to the chancellor to require of appellee, as a condition of further prosecuting the proceeding in the county court, and appropriating to its use the land in contest, to first pay to appellants the value of that ceded in 1872; and in case the parties do not agree upon the amount, an issue out of chancery in regard thereto must be had.