CITY OF OSCEOLA et al. v. CHICAGO, B. & Q. R. Co.

(Circuit Court of Appeals, Eighth Circuit. May 6, 1912.)

No. 3,554.

EMINENT DOMAIN (§ 47*)—CONTRACTS—ESTOPPEL.

A contract between a city and a railroad company, pursuant to which the city vacated and conveyed to the company certain street crossings, for which it received a consideration in improvements made by the company, at least in the absence of express provision therefor, does not preclude the city from subsequently reopening some of such streets by condemnation proceedings in the exercise of the power vested in it by statute.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 107–120; Dec. Dig. § 47.*]

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

Suit in equity by the Chicago, Burlington & Quincy Railroad Company against the City of Osceola and others. Decree for complainant, and defendants appeal. Reversed.

O. M. Slaymaker, for appellants.

Edward C. Eicher and Thomas Hedge (M. L. Temple and W. D. Eaton, on the brief), for appellee.

Before HOOK and SMITH, Circuit Judges, and MARSHALL, District Judge.

HOOK, Circuit Judge. Under a contract made in 1905 the city of Osceola, Iowa, vacated and conveyed to the railroad company in fee certain street crossings over the railroad right of way and tracks. In consideration of this the company at a cost of about $50,000 constructed two subways under its tracks, an overhead footbridge and a sidewalk, and also acquired and dedicated to the city other ground for public use. In 1909 the city council decided to open two of the vacated streets, but in narrower width than formerly, adopted an ordinance to that effect, and started condemnation proceedings. The company obtained an injunction in the Circuit Court, and this appeal by the city followed.

No fraud on the part of the city council is charged, but simply that the contract of 1905 contemplated that the company should have the continuous and uninterrupted exclusive use of the streets vacated and conveyed to it, and that the reopening of any of them for public travel would cause it irreparable damage. But we find no provision in the contract by which the city renounced for the future the power conferred by the Legislature to open and extend streets, and for that purpose to exercise the power of eminent domain, and in such an important matter none should be lightly inferred. The company may have relied upon the sufficiency of the crossings it constructed under the contract and the belief that no others at grade would be again established, but it is another thing to infer that the city bartered away

its power and its duty to act whenever the public needs thereafter required it to do so. We do not mean to imply by this that what the company contends for could have been accomplished even by express provisions. Chicago, etc., Railroad v. Nebraska, 170 U. .S. 57, 72, 18 Sup. Ct. 513, 42 L. Ed. 948. It is sufficient to say here that the terms of the contract which was made left the city free to act according to the developments of the future. The matter of. the necessity for opening and extending highways was intrusted by the Legislature to the municipal authorities, and, in the absence of fraud, their determination will not be reviewed by the courts. The case of the company is not ·so hard as it says. In the condemnation proceedings it must be compensated for the value of its property taken and its damages.

The decree is reversed, and the cause is remanded, with direction to dismiss the bill.