**GREENUP COUNTY v. CHESAPEAKE & O. RY. CO.**

No. 106.

District Court, E. D. Kentucky, Catlettsburg.

May 16, 1947.

J. R. Sowards, of Greenup, Ky., John W. McKenzie, of Ashland, Ky., and Thomas E. Nickell, of Greenup, Ky., for plaintiff.

LeWright Browning, of Ashland, Ky., for defendant.

SWINFORD, District Judge.

This case is here on removal from the County Court of Greenup County, Kentucky. It is a proceeding brought by Greenup County to condemn a right of way for a county road over the property and tracks of the defendant, the Chesapeake and Ohio Railway Company. The petition is in the usual form of such condemnation proceedings and is brought pursuant to Section 178.115 and related sections of Kentucky Revised Statutes. The defendant has filed its answer. The case is before the Court at this time to consider the plaintiff's motion to strike the second and third paragraphs of the answer.

Since the motion admits the truth of the allegations contained in these paragraphs of the answer, there is presented squarely the question of their sufficiency in law as a defense to the condemnation proceeding.

The second defense denies that the strip of land sought to be condemned is required by the county or is necessary for a public road or that a public county road or any road is required over the defendant's tracks at that location.

The third defense is best understood by direct quotations from the pleading itself. It is alleged that a "certain highway known and designated as U. S. Route No. 23 crosses the Ohio river from the State of Ohio into the State of Kentucky near the lower or western boundary of Greenup County, Kentucky, and then runs eastwardly parallel with the Ohio River through the County and City of Greenup to and through the City of Ashland in Boyd County, Kentucky; that said highway is and has been for many years one of the most traveled highways in the State of Kentucky and extends through thickly populated territory, including the Cities of Portsmouth, Ohio, and Greenup, Russell, Ashland, and Catlettsburg, Kentucky, and thence extending southwardly along and through the Big Sandy River valley to points in the south and southeastern parts of the United States; that at Greenup and Ashland, Kentucky, it connects with other

highways extending to other sections of the state; that the said U. S. Route 23 is the only highway connecting the City of Greenup with the Cities of Russell and Ashland, and that prior to the times hereinafter set out said highway crossed at grade, the tracks and right of way of this defendant, which said crossing was known as the White Oak Crossing and was located approximately 3,600 feet èast of the eastern corporate limits of the City of Greenup; that said grade crossing was especially dangerous to the traveling public by reason of its location, the heavy traffic upon and along said highway and the great number of trains operated over said crossing by this defendant; that there also connected with the said U. S. Route 23 a certain other highway which extended from said U. S. Route 23 through Greenup County into Carter County where it connected with U. S. Route 60 at or near the City of Grayson, Kentucky; that said latter described highway crossed the tracks and right of way of this defendant immediately east of the eastern corporate limits of the City of Greenup; which said crossing was known as the Argillite Road Crossing; that said grade crossing was especially dangerous to the traveling public for reason of its location, the heavy traffic upon and along said highway and the great number of trains operated over said crossing by this defendant; that there also connected with said U. S. Route 23 a roadway known as Collins Lane, which said latter described roadway crossed the tracks and right of way of this defendant at a point between the aforesaid Argillite Road Crossing and the aforesaid White Oak Crossing; that said grade crossing was especially dangerous to the traveling public by reason of its location, the heavy traffic upon and along said highway and the great number of trains operated over said crossing by this defendant.

"Defendant further states that in the year 1938 the Department of Highways of the Commonwealth of Kentucky set aside and allocated certain of the funds appropriated by the Federal Government for the purpose of the elimination of highway and railroad grade crossings under the United States Federal Aid Grade Crossing program as authorized under Section 8 of that certain act of the 74th Congress of the United States, being Public Act 686, approved June 16, 1936 [49 Stat. 1521], for the elimination of the aforesaid grade crossings and thereafter the said Department of Highways and this defendant entered into a contract providing for the elimination of said grade crossings, and the construction, in lieu thereof, of an overhead crossing at a point approximately on the location of the above mentioned Argillite Road Crossing. * * *

"Defendant further states that under the State and Federal laws and regulations governing the program for the elimination of highway and railroad grade crossings the funds allocated, set aside and made available for the construction of the aforesaid overhead crossing could not be legally used for the acquisition of rights of way required to be obtained for the construction of said improvement, or for the settlement of any property damage claims arising by reason of said improvement; that it was also necessary that appropriate action be taken by the County of Greenup and the City of Greenup for the closing of the grade crossings proposed to be closed, or desired to be closed, on account of said improvement; that following the execution of the aforesaid contract the Department of Highways for the Commonwealth of Kentucky entered into negotiations with this defendant and with the plaintiff, Greenup County, and with the City of Greenup, to the end that funds might be provided for the purchase of necessary rights of way and the settlement of property damage claims and that appropriate action be taken for the closing of said grade crossing.

"That thereafter under date of June 7, 1939, a written contract was entered into between this defendant, the City of Greenup and the plaintiff, Greenup County, which provided, in substance, that this defendant would contribute and pay to the Department of Highways for the acquisition of necessary rights of way the sums set out in said contract, to-wit: $31,000.00 and that said Greenup County would assume liability for and obligate itself to pay all claims for property damage that might be established by owners of property situa-

ted in Greenup County and outside the corporate limits of the City of Greenup on account of the construction of said overhead crossing and the closing of the aforesaid grade crossings, or on account of the relocation or changes in grade of highways made in connection with said improvement and further that said Greenup County would, by appropriate legal proceedings, cause the grade crossings above referred to, * * * to be vacated, closed and abandoned; that said contract further provided, in substance, that the City of Greenup would enact such ordinances and take such other steps as might be necessary for the closing, vacating and abandonment of the grade crossings within the corporate limits of the City of Greenup described in said contract and would assume and obligate itself to pay all claims for property damage that might be established by owners of property situated within the corporate limits of the City of Greenup on account of the construction of said improvement and the approaches thereto, or on account of any relocation or changes in grade of streets or highways made in connection with said improvement, or on account of the closing and abandonment of the grade crossings within the City of Greenup as described in said contract; that the execution of said contract by and on the part of Greenup County was duly authorized and directed by the Fiscal Court of Greenup County and that the execution of said contract by the City of Greenup was duly authorized and directed by an Ordinance duly enacted by the City Council of the City of Greenup. * * *

"That thereafter the plaintiff, Greenup County, failed and refused to carry out the provisions of said contract, or to perform the obligations therein assumed by it, whereupon, the City of Greenup filed in the Circuit Court of Franklin County, Kentucky, its petition in equity" praying "for a declaration of its rights under the aforesaid contract and for an injunction requiring the performance of Greenup County of the obligations set out in said contract above referred to and described; that thereafter a judgment was duly entered in said cause, which said judgment specifically adjudicated that the contract hereinbefore

referred to between the plaintiff, Greenup County, The City of Greenup and this defendant was a valid contract and binding upon the parties thereto; that said judgments further enjoined and commanded the defendants in this said suit, including the plaintiff herein, Greenup County, to carry out all the obligations undertaken by them as set out in said contracts above referred to and described, all of which was thereafter done and performed. * * *

"That thereafter this defendant paid to the said Department of Highways the aforesaid sum of $31,000.00, which said money was used and expended by the plaintiff herein, Greenup County, in the purchase and acquisition of rights of way required in connection with the construction of the aforesaid overhead crossing and the changes thereby necessitated in the location of the highways affected; that Greenup County expended many thousands of dollars in the settlement of property damage claims growing out of the construction of said overhead crossing and the closing of the hereinbefore described grade crossings; that the County of Greenup, by appropriate legal action, caused the said White Oak Crossing, Collins Lane Crossing and Argillite Road Crossing to be closed, vacated and abandoned; that this defendant further expended the sum of $848.59 on account of changes in its tracks, roadbed, and appliances necessitated by the construction of said overhead crossing.

"That the aforesaid contract between this defendant and the plaintiff, Greenup County, and the City of Greenup was entered into by this defendant with the understanding that the grade crossings named would be eliminated and the overhead crossings, provided for would be constructed and used in lieu of said grade crossings, the purpose of said contract being to eliminate all grade crossings east of the corporate limits of the City of Greenup and thereby obviate the hazards and dangers of public travel upon and over said grade crossings.

"That the crossing now proposed to be opened and constructed over defendant's line of railroad is located 365 feet west of the former location of the White Oak crossing and that the purpose of this pro-

656

ceeding and of the establishment of said crossing is to open said crossing and maintain same in lieu of the old White Oak Crossing and the effect of said proceeding is to violate the provisions of said contract, and of the aforesaid judgment of the Franklin Circuit Court ordering the closing of the said White Oak Crossing; that the establishment and opening of the crossing described in the petition would result in the creation of a hazard to the traveling public and to this defendant and would seriously interfere with the safe, proper and economical operation of defendant's line of railroad; that the crossing proposed to be opened and established by this proceeding would serve the same territory as that formerly served by the aforesaid White Oak, Collins Lane and Argillite Road crossings, and would be used by the traffic that formerly passed over the aforesaid crossing; that the proposed establishment of the highway and crossing described in the petition is a subterfuge, fraudulently undertaken by the plaintiff, to avoid the obligations of the hereinbefore described contract and the provisions and terms of the hereinbefore described judgment of the Franklin Circuit Court, and has for its purpose the substitution of the proposed new crossing for the former White Oak crossing; that the opening of the proposed new crossing would be a violation and breach of the letter and spirit of the aforesaid agreement of June 7, 1939, between the plaintiff herein, the City of Greenup, and this defendant, and would violate and impair the terms and provisions of the aforesaid judgment of the Circuit Court of Franklin County, Kentucky.

"Defendant states that the plaintiff is, by reason of the foregoing facts and the provisions and terms of the aforesaid contract and judgment, estopped to maintain this proceeding or to cause the highway and crossing described in the petition to be established or opened.

"That if the proposed crossings be opened and established, then this defendant as a condition precedent to the opening and establishment thereof, is, in equity and good conscience, entitled to have refunded and repaid to it by the plaintiff, the aforesaid sum of $31,000.00 and $848.59, with interest."

I will consider these paragraphs of the answer in the order stated. The motion to strike the second defense should be sustained.

This Court cannot pass upon the question of necessity for the proposed road under the allegations of this paragraph of the answer. The naked question of necessity is expressly in the judgment of the fiscal court of Greenup County. Its discretion must be judicial and is subject to review upon appeal to the Circuit Court within thirty-five days from the date the order declaring the necessity for the road is entered. KRS 178.115(2), 178.120 and 416.110.

From the record it appears that the county complied with all required statutory formalities and that no appeal has ever been prosecuted from the order of the fiscal court. In my judgment this is conclusive of the plaintiff's right to institute condemnation proceedings and defenses of necessity or lack of consideration are cut off by failure to appear and present them to the fiscal court or to prosecute an appeal, as allowed by the statute, to the Circuit Court of Greenup County.

The rule is best expressed in the following quotation from Louisville & Nashville R. R. Co. v. City of Louisville, 131 Ky. 108, 114 S.W. 743, 747, 24 L.R.A.,N.S., 1213: "It is very generally held by text-writers and courts that the questions of necessity and public use, both of which enter into the subject of eminent domain, are distinct in the sense that the necessity for the taking is a matter to be determined by the legislative department, state, or municipal, as the case may be, and the question whether it is taken for a public use is for the judiciary. In other words, the prevailing rule and the one in force in this state is that, when the municipal authorities of a city declare in the regular way that it is necessary streets shall be opened, their action is conclusive of that question, and the courts will not, except in rare case, inquire into the necessity for opening the street or look into the motives or reasons that induced the municipal authorities to order it opened. And so, when a street or public way in a city

is ordered to be opened, it will be presumed that it is to be opened for public purposes; and ordinarily the courts will not inquire into the question whether or not it is for public use. But a case might arise in which it could be made plain that the street or highway was not opened for the use of the public, but for the exclusive advantage of an individual, and was not intended to be used by the public generally, and, if this was made to appear, the courts would have the undoubted right to prevent such abuse of the exercise of the power of eminent domain, a power that finds its only support in the proposition that the property is taken for a public use. Thus it is said in Dillon on Municipal Corporations, § 600: 'Of the necessity or expediency of exercising the right of eminent domain in the appropriation of private property to public uses, the opinion of the Legislature or of the corporate body or tribunal upon which it has conferred the power to determine the question is conclusive upon the courts, since such a question is essentially political in its nature and not judicial. * * * But, if the Legislature has declared the use or purpose to be a public one, its judgment will be respected by the courts, unless the use be palpably private or the necessity for the taking plainly without reasonable foundation. But, if the use be public, or if it be so doubtful that the courts cannot pronounce it not to be such as to justify the compulsory taking of private property, the decision of the Legislature embodied in the enactment giving the power that a necessity exists to take the property is final and conclusive.' To the same effect is Lewis on Eminent Domain, § 239; Smith on Municipal Ordinances, §§ 702, 704; Allen v. Woods, 45 S.W. 106, 20 Ky.Law Rep. 59; Henderson v. City of Lexington, [132 Ky. 390], 111 S.W. 318, 33 Ky.Law Rep. 703, [22 L.R.A.,N.S., 20]; Chesapeake Stone Co. v. Moreland, [126 Ky. 656], 104 S.W. 762, 31 Ky.Law Rep. 1075, [16 L.R.A., N.S., 479]."

An examination of later authorities shows that the Kentucky courts have consistently adhered to this position. Baxter v. City of Louisville, 224 Ky. 604, 6 S.W. 2d 1074; Spahn et al. v. Stewart et al., 268 Ky. 97, 103 S.W.2d 651; Jefferson County v. Clausen et ux., 297 Ky. 414, 180 S.W.2d 297; Joslin Mfg. Co. v. Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167; Rindge Co. et al. v. County of Los Angeles, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186.

The fact that there are other ways and means whereby residents to be served by the proposed new street may travel to and from their homes is not sufficient showing to cause the court to substitute its judgment for that of the fiscal court on the question of necessity. In Louisville & N. R. Co. v. City of Louisville, 190 Ky. 214, 227 S.W. 160, 161, Judge Clay, speaking for the court in the opinion, said: "It is first insisted that the trial court erred in excluding evidence tending to show that there was no necessity for the proposed extension. It is the established rule that the necessity for opening or extending streets, as well as the necessity for condemning rights of way for such purposes, is a matter which has been confided to the decision of the municipal authorities, and their judgment is conclusive upon the courts, unless it be made to appear that the use was palpably private, or the necessity for the taking was without any reasonable foundation. Louisville & N. R. Co. v. City of Louisville, 131 Ky. 108, 114 S.W. 743, 24 L.R.A., (N.S.), 1213. The offered evidence merely tended to show that there were other ways, both near and remote, by which Frankfort avenue and the property in that section might be reached, and that, with the extension of Hillcrest avenue, the blocks in that section would not be as long as they were in other sections of the city. In our opinion this evidence did not come up to the requirement of the rule, and was properly rejected, as not being sufficient to authorize the court to substitute its judgment for the judgment of the municipal authorities on the question of necessity."

The defendant's third defense, which is the second question to be considered here, is in effect a plea of estoppel against the county exercising its right of eminent domain. It poses three propositions: First, that by the contract of June 7, 1939, the county agreed to close crossings and leave them closed and thereby gained benefits for which the defendant contributed $31,

848.59; second, that the judgment of the Franklin Circuit Court is res judicata of all matters dealt with in the contract and the plaintiff cannot now repudiate the contract by opening the road; third, that should the county persist in its determination to open the road and was permitted by law to do so it should refund the $31,-848.59 which the defendant paid under the contract in contemplation of relief from crossing hazards and other expenses in the area affected.

This seems to be a case in which to some extent justice is on one side and the law on the other. As is well said by counsel for the defendant, it is one in which an individual would be estopped. I am confident that the railway company and the Federal government felt that by performance of the contract as directed by the Franklin Circuit Court they were eliminating grade crossings from the community in the immediate area and the funds were paid with that in mind. However, the law of estoppel dealing with individuals cannot in any sense be analogous to the law dealing with the right and duty of an arm of the State to exercise its right of eminent domain in serving the people under its police power.

The same reasoning must apply to this defense as that applied to the first defense discussed in this opinion. The whole matter rests on the question of necessity for the road. If it is necessary to the community this court cannot grant the relief asked by the defendant notwithstanding the contract, elimination of grade crossing program, ruling of the Franklin Circuit Court or any other reason. To hold otherwise would be to deny an essential right of sovereignty the extent and application of which must rest with the legislature and such municipal legislative bodies which it clothes with the authority. I well recognize the difficulty confronted by the railroads and Federal authorities in carrying out the grade crossing elimination program provided by the Act of the Congress of June 16, 1936. Such difficulties may, however, be largely imaginary as municipal legislative bodies will undoubtedly decline to open crossings in the absence of clear necessity. With reference to the use

of federal funds some legislation may be found necessary. That, however, is no concern of this court. The record presents a concrete case and no speculation on theoretical problems can be entertained.

The contract was a valid binding contract to eliminate certain grade crossings. It was construed and directed to be complied with by the Franklin Circuit Court. So far as the record discloses it was fulfilled in every detail by all the parties to their mutual satisfaction. Now if to open a necessary grade crossing at this time was a condition which the defendant contemplated to have been covered by the contract and was in the minds of the parties at the time the contract was executed the fiscal court was exceeding its authority. It could not contract away this power. Any provision of a contract on such an assumption was void. Missouri, K. & T. Ry. Co. et al. v. Oklahoma et al., 271 U.S. 303, 46 S.Ct. 517, 70 L.Ed. 957; Wabash Railroad Co. v. Defiance, 167 U.S. 88, 17 S.Ct. 748, 42 L.Ed. 87. The county could not have placed a valid provision in the contract to the effect that its power of eminent domain should be withheld in the future. Consequently, if an express provision would have been invalid an inference of such a provision would be likewise ineffective to bind the county.

In City of Osceola et al. v. Chicago, B. & Q. R. Co., 8 Cir., 196 F. 777, a case directly in point here, the city had contracted with the railroad company and conveyed to it in fee certain street crossings over its right of way and tracks. In consideration of the closing of the streets and conveyance the railroad at a cost of about $50,000 built an overpass over and two subways under its tracks. Four years later the city sought to open two of the vacated streets. The railroad obtained an injunction against the city in the district court. On appeal the Eighth Circuit Court of Appeals in reversing the lower court said: "But we find no provision in the contract by which the city renounced for the future the power conferred by the Legislature to open and extend streets, and for that purpose to exercise the power of eminent domain, and in such an important matter none should be lightly inferred.

The company may have relied upon the sufficiency of the crossings it constructed under the contract and the belief that no others at grade would be again established, but it is another thing to infer that the city bartered away its power and its duty to act whenever the public needs thereafter required it to do so. We do not mean to imply by this that what the company contends for could have been accomplished even by express provisions. Chicago, [B. & Q.] Railroad [Co] v. Nebraska, 170 U.S. 57, 72, 18 S.Ct. 513, 42 L.Ed. 948."

In Cornwall v. Louisville & Nashville R. Co., 87 Ky. 72, 7 S.W. 553, 556, our Kentucky Court said: "But under the right of eminent domain reserved by every sovereign state, and nowhere more distinctly recognized as existing than by this court, it is in the power of the legislature to condemn the property of the appellants for the use of appellee, which has been settled to be a public use; and this power can not be impaired or defeated by any private contract between a railroad company and the owner of property that the legislature may at any subsequent time deem necessary for public use." See also Chicago, B. & Q. R. Co. v. Nebraska, etc., 170 U.S. 57, 18 S.Ct. 513, 42 L.Ed. 948, and State of Georgia v. City of Chattanooga, etc., 264 U.S. 472, 44 S. Ct. 369, 68 L.Ed. 796.

The position of the defendant in this lawsuit is succinctly expressed by its counsel in his original brief, from which I quote: "It should be understood at the outset that it is not contended that the County could, or did, contract away its governmental power of eminent domain; it is not questioned but that if changed conditions, and resulting public needs, should require the opening of a grade crossing in the area involved, the County would have the right so to do. In short, it is the position of the defendant Railway Company, that the County having obtained the expenditure of many thousand of dollars of funds of the Railway Company and the federal government in the construction of an improvement upon the express recognition that existing grade crossings should and would be eliminated, the County should not now be permitted to repudiate its agreement, but should be limited to the installation of an overhead or undergrade crossing at the desired location, in order that the purpose for which the foregoing expenditures were made shall not be defeated in whole, or in part."

To sustain this position the case of Florida East Coast Ry. Co. v. City of Miami, 76 Fla. 277, 79 So. 682, 1 A.L.R. 303, is cited. In the light of numerous cases the decision in that case is subject to serious question. Two judges who sat wrote strong dissenting opinions. A footnote to the case found in the annotation in 1 A.L.R. 316, states: "It would seem that this decision is contrary to the weight of authority." While it is some authority for the defendant's position here it is distinguishable on the facts. There was an express contract between the city and the railroad to relieve the company from maintaining a watchman on a designated street. Among other things, the property of the railroad used for a station and yards was directly affected. The contract required the removal of these properties to a distant point in order to allow the city to open the street at which it agreed to maintain a crossing watchman or safety gates. The railroad agreed to forgo any contest over the value of its property and sustained great expense in complying with the contract. The real question was over the agreement of the city to maintain and be responsible for the crossing. The court held that an ordinance putting this responsibility on the railroad was a wrongful repudiation of its agreement and sustained the position of the railroad that the ordinance was invalid. New Orleans Public Service, etc. v. New Orleans, 281 U.S. 682, 50 S.Ct. 449, 74 L.Ed. 1115, is contrary to this ruling. In that case the railroad company was required to abandon an overpass which had cost it $58,000 and construct at its own expense a grade crossing at a cost of $135,000.

Another case relied on by the defendant is City of Norton v. Lowden et al., 10 Cir., 84 F.2d 663. The court ruled that property already necessary for public use could not be condemned for a different public use where the second public use destroyed the first and endangered persons using it. The case clearly reaffirms the law applied in this case. Here there would be no destruc-

tion of the present public use of the defendant's right of way.

■ The whole law of this case is best summarized by the text (citing authorities) in Section 101 of 18 Am.Jur., Page 727: "A highway may be established across a railway and the land of the company condemned for that purpose, subject generally to the limitation that the crossing must occur at a point where the use of the highway or street will not deprive the railroad of the use of its tracks. This right is usually held to be conferred on municipalities by a general grant of power to lay out and open streets and highways and to condemn land for that purpose, provided the opening of the way will not destroy or interfere with, except incidentally, the use of the land for railroad purposes. And the rule has been applied even though the railroad company suffered some inconvenience. A street cannot, however, be extended through railroad property occupied by buildings or other structures necessary for the use of the railroad, in such a way that the use of such structures for railroad purposes will be destroyed; nor will express power to lay out streets across railway tracks permit their extension across lands devoted to such a public use as a station, railway yard, and the like. But, power to extend streets and highways over or across any railroad track, right of way, or land of any railroad company authorizes their extension across a railroad yard, and a street may be laid out across depot grounds when the interference with the operation of the railroad will be inconsiderable. Power to extend a street 'over' a railroad right of way includes the right to cross by means of a viaduct or bridge, but the construction of a bridge or viaduct is not required by a provision that the right of way must be restored to its former state or in such manner as not to have impaired its usefulness. Discretion vested in a city council to cross at grade or by means of a bridge or viaduct will not be controlled by the courts."

■ To take the position that the county has the right to cross the tracks but because of the contract of June 7, 1939, it must do so by an overpass or underpass is to place a qualification upon the sovereign right of eminent domain. It would have the effect of saying that while a government agency cannot bind itself not to exercise the right it may bind itself to only partially exercise the right and may bind itself to forego a full and complete exercise of its right of eminent domain. Such reasoning is clearly fallacious. Such a legal conclusion would lead to impossible results. The sovereign cannot be limited or hampered in the right and duty of condemning property for public use when necessity demands. In the case at bar to require the county to resort to an overhead bridge or an underpass is to concede the absolute necessity to cross the railroad right of way but to place an engineering and financial burden upon the county that might well be impossible of fulfillment and result in abandonment of the project. Even though the instant case might lend itself very satisfactorily to such a decision it would modify the present legal principles of the law of eminent domain. Such a right must be fixed and definite. To undertake to abrogate, modify, change or except to the rule to fit the equities of each individual case would throw the law into such a maze of confusion as to make it unintelligible and impossible of rational application. Wabash Railroad Co. v. Defiance, supra; Contributors to Pennsylvania Hospital v. City of Philadelphia et al., 245 U.S. 20, 38 S.Ct. 35, 62 L.Ed. 124; State of Georgia v. City of Chattanooga, Tennessee, supra.

In the Wabash Railroad case [167 U.S. 88, 17 S.Ct. 751] the court said: "Indeed, the general principle that the legislative power of a city may control and improve its streets, and that such power, when duly exercised by ordinances, will override any license previously given by which the control of a certain street has been surrendered to any individual or corporation, is so well established, both by the cases in this court and in the courts of the several states, that a reference to the leading authorities upon the subject is sufficient. Indeed, the right of a city to improve its streets by regrading or otherwise is something so essential to its growth and prosperity that the common council can no more denude itself of that right than it can of its power

to legislate for the health, safety, and morals of its inhabitants."

The court in the Pennsylvania Hospital case [245 U.S. 20, 38 S.Ct. 36] uses the following language: "There can be now, in view of the many decisions of this court on the subject, no room for challenging the general proposition that the states cannot by virtue of the contract clause be held to have divested themselves by contract of the right to exert their governmental authority in matters which from their very nature so concern that authority that to restrain its exercise by contract would be a renunciation of power to legislate for the preservation of society or to secure the performance of essential governmental duties."

The following statement of the rule is given in the Georgia case [264 U.S. 472, 44 S.Ct. 370]: "The power of eminent domain is an attribute of sovereignty, and inheres in every independent state. See Boom Co. v. Patterson, 98 U.S. 403, 406, 25 L.Ed. 206; United States v. Jones, 109 U.S. 513, 518, 3 S.Ct. 346, 27 L.Ed. 1015; Shoemaker v. United States, 147 U.S. 282, 300, 13 S.Ct. 361, 37 L.Ed. 170; Cincinnati v. Louisville & Nashville R. R. Co., 223 U.S. 390, 404, 32 S.Ct. 267, 56 L.Ed. 481. The taking of private property for public use upon just compensation is so often necessary for the proper performance of governmental functions that the power is deemed to be essential to the life of the state. It cannot be surrendered, and, if attempted to be contracted away, it may be resumed at will. [Contributors to] Pennsylvania Hospital v. Philadelphia, 245 U. S. 20, 38 S.Ct. 35, 62 L.Ed. 124; Galveston Wharf Co. v. Galveston, 260 U.S. 473, 43 S.Ct. 168, 67 L.Ed. 355. It is superior to property rights (Kohl v. United States, 91 U.S. 367, 371, 23 L.Ed. 449) and extends to all property within the jurisdiction of the state,—to lands already devoted to railway use, as well as to other lands within the state. (United States v. Gettysburg Electric Ry. Co., 160 U.S. 668, 685, 16 S.Ct. 427, 40 L.Ed. 576; Adirondack Ry. Co. v. [People of State of] New York, 176 U.S. 335, 346, 20 S.Ct. 460, 44 L.Ed. 492)."

The alternative plea that in the event the county is permitted to condemn that the $31,848.59 paid by the defendant be refunded to it cannot be sustained. The railway company received substantial value for the expenditure. It enabled the highway commission, for the benefit of Greenup County, to secure $400,000 of federal funds which, as counsel for the defendant says would not have been made available had it not been for the cooperation and contribution of the railroad.

The converse is equally true. Very likely the highway commission could not have secured the funds which ennured to the benefit of the railway company without the cooperation of the City of Greenup and Greenup County.

Certain grade crossings were eliminated. The right of way was relieved of definite hazards to the movement and safety of its trains. Undoubtedly the opening of the present proposed road will return some portion of the hazard, but certainly not all of it. It would be impossible to divide the sum and order refund of the proportionate part in its relation to the proportionate part of the hazard re-assumed. This would also call for a refund of the federal funds on a like basis. Such a consideration is so highly speculative and fantastic that it admits of no further discussion. The railroad received definite and permanent benefit from its expenditure. In fact, when the contribution of $400,000 of federal funds is considered, a benefit far in excess and clearly out of proportion to the cost to it.

When it entered into the contract of June 7, 1939, it knew the law. It knew that the municipality could not contract away its authority to condemn needed property. It cannot now be heard to complain. In New Orleans Public Service, etc. v. New Orleans, supra, the same question was raised that is raised here. The Supreme Court upheld the right of the city, even though it required a large expenditure of money on the part of the railway, and in its opinion, speaking through Justice Butler, said [281 U.S. 682, 50 S.Ct. 451]: "While the elimination of grade crossings is desirable in the interest of safety, there are other means that reasonably may be

employed to safeguard against collisions at intersections of public streets and railroad tracks."

I have been aided in this all too lengthy opinion by able and exceptionally well prepared briefs and arguments. I have tried to carefully examine all cited authorities that were available to me. I have not discussed separately all of the numerous cases cited, but have referred to those which seem to me most applicable to the theories and positions of the respective sides.

In the light of the texts and reported cases, I must conclude that the second and third paragraphs of the answer do not state good defenses to this condemnation proceeding.

The motion to strike these paragraphs should be sustained. An order to that effect is this day entered.