### CHESAPEAKE & O. RY. CO. v. GREENUP COUNTY, KENTUCKY.

#### No. 10704.

United States Court of Appeals
Sixth Circuit.
June 3, 1949.

LeWright Browning, Ashland, Ky., Le-
Wright Browning, Ashland, Ky., on the

brief; Browning & Gray, Ashland, Ky., of counsel, for appellant.

Oscar Sammons and Thomas E. Nickel, Greenup, Ky., Oscar Sammons, Greenup, Ky., John W. McKenzie, Ashland, Ky., and Thomas E. Nickel, Greenup, Ky., on the brief, for appellee.

Before HICKS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This condemnation proceeding was brought in its county court by the appellee, Greenup County, Kentucky, against the appellant railroad company. Pursuant to authority granted by Kentucky Revised Statutes (sections 178.120 and 416.110), the county sought to condemn a certain easement for a highway grade crossing over the tracks and right of way of the Chesapeake and Ohio Railway Company; and, by petition of appellant on the ground of diversity of citizenship, the action was removed to the United States District Court for Eastern Kentucky.

In its original and amended answers there, the railroad company challenged the right of Greenup County to maintain the condemnation proceeding. The motion of the county to strike the second and third vital defenses set up in appellant's amended answer was sustained; and judgment was subsequently entered condemning the right of way or easement sought and fixing its value at $500. The district judge filed a carefully prepared opinion, reported in 71 F.Supp. 652, in which are cited the authorities deemed by him to impel the conclusion that the second and third paragraphs of appellant's amended answer which constituted its complete defenses, were legally inadequate. Being denied the right to adduce proof in support of its insistence that in the circumstances of the case the county has no right to condemn the easement in question, the railroad company has appealed to this court.

■ In ruling upon the motion to strike, the district court was careful to accept as true the allegations of appellant's answer, quoted extensively from that pleading, and considered no extraneous circumstances. We, too, look to appellant's stricken answer for the factual setting and may not consider statements of fact in appellee's brief which are not disclosed in the record.

One of the most traveled highways in Kentucky is U.S. Route No. 23, which crosses the Ohio River near the western boundary of Greenup County and runs thence eastwardly parallel with the Ohio River through the City of Greenup and on to Ashland, Kentucky. This highway crossed at grade the tracks and right of way of the Chesapeake and Ohio Railroad at White Oak Crossing, some 3,600 feet east of the eastern corporate limits of the City of Greenup. Connected with Route 23 was another highway which extended through Greenup County into Carter County, and connected with U.S. Route 60 near Grayson, Kentucky. This latter highway crossed the tracks and right of way of appellant at the Argillite Road Crossing immediately east of the eastern corporate limits of the City of Greenup. A roadway known as Collins Lane also connected with U.S. Route 23 and crossed the tracks and right of way of appellant at a point between the White Oak and Argillite Road crossings. These three crossings were especially dangerous to the traveling public, because of their location and the heavy traffic and the numerous trains passing over them.

In 1938, the Department of Highways of Kentucky, supplied with Federal funds, entered into a contract with appellant to eliminate the aforementioned grade crossings and to construct in place of them an overhead crossing at a point approximately on the location of the Argillite Road Crossing. Inasmuch as the law forbade the allocated funds for the elimination of grade crossings to be used for obtaining requisite rights of way, or for settlement of property damage claims which might arise out of the contemplated improvement, it was necessary that appropriate action be taken by the County of Greenup and the City of Greenup for closing the grade crossings proposed to be closed.

Accordingly, following negotiations, a contract was executed on June 7, 1939, by and between the appellant, the appellee, and the City of Greenup, which provided in substance that appellant would contribute

and pay to the Department of Highways for the acquisition of necessary rights of way the sum of $31,000; that Greenup County would assume liability for all property damage claims by owners of property outside the city, resultant from the construction of the overhead crossing and the closing of the grade crossings, or on account of the relocation or changes in grades of highways made in connection with the improvement; and that Greenup County would, by appropriate legal proceedings, cause the grade crossings to be vacated, closed and abandoned. The contract further provided that the City of Greenup would enact ordinances and take other necessary steps for the closing, vacating and abandonment of the grade crossings within its corporate limits. The city obligated itself to pay all property damage claims on the part of owners of property within the city limits. The execution of this contract by the county was duly authorized and directed by the Fiscal Court of Greenup County; and execution by the City of Greenup was duly authorized and directed by ordinance enacted by its Council.

Upon the failure and refusal of Greenup County to perform the obligations of its contract, the City of Greenup filed a bill in equity in the state circuit court praying declaratory judgment of its rights under the contract and for a mandatory injunction requiring the county to perform its obligations thereunder. It was adjudged that the contract was valid and binding on the parties; and both appellant, which had been joined as a party to the suit, and appellee were commanded to perform their respective specified obligations under the contract. The mandate of the state circuit court was obeyed by appellant and payment was made to the Department of Highways of Kentucky of the sum of $31,000 which was expended by Greenup County in acquiring the necessary rights of way, in changing the location of the highways, and in settling property damage claims. Appellant expended the further sum of $849.59 to make changes in its tracks, roadbed, and appliances necessitated by the construction of the overhead crossing. On February 5, 1940, the Coun-

ty of Greenup took appropriate legal action to close, vacate and abandon the three grade crossings by petition addressed to its county court. That court entered judgment ordering that the grade crossings be abandoned, vacated and closed. The judgment recited that, after the construction and opening to travel of the overhead crossing, the existing grade crossings would no longer be necessary for the accommodation of the public and that, inasmuch as they were hazardous and dangerous, it was deemed to the interest of the public safety and convenience that the grade crossings be closed and abandoned. On appeal to the circuit court, this judgment was affirmed.

The obvious purpose of the contract between the city, the county and the railroad company was to eliminate the three grade crossings, so as to decrease the hazard of public travel by the construction of a single overhead crossing. The answer of appellant asserts that the crossing now proposed to be opened and constructed over its line of railroad is located only 365 feet west of the former location of the White Oak Crossing and that the purpose of this proceeding is to substitute the new crossing for the old White Oak Crossing. The effect of this action is stated to be in violation of both the contract and the judgment of the state circuit court directing the closing of the White Oak Crossing. The answer avers further that the establishment of the crossing described in the petition would result in the creation of a hazard to the traveling public and to the railroad company, and would seriously interfere with the safe, proper and economical operation of its railroad line; that the crossing proposed to be established by this proceeding would serve the same territory as that formerly served by the White Oak, Collins Lane and Argillite Road crossings, and would be used by the traffic which formerly passed over them; that the proposed establishment of the highway and crossing described in the petition is a "subterfuge, fraudulently undertaken" by Greenup County to avoid its contractual obligations and the judgment of the state circuit court; and that the opening of the proposed new crossing would be "a violation and breach

of the letter and spirit" of the agreement of June 7, 1939, between the county, the city, and appellant, and would violate and impair the judgment of the state circuit court.

The answer pleads that the County of Greenup is, for the foregoing reasons, estopped from maintaining this proceeding or from causing the highway and crossing described in the petition to be opened and established. The answer concludes that if the proposed crossing be opened and established, appellant is, in equity and good conscience, entitled to have Greenup County refund and repay to it the aforementioned sums of $31,000 and $848.59, with interest.

■ Assuming, as is quite apparent, that Greenup County has breached its contract with the railroad company, there can be no estoppel successfully invoked against its condemnation of the right of way and easement which it seeks in this proceeding. A state (and, of course, a county) cannot by contract divest itself of its power of eminent domain: that is, to take private property for public use upon payment of just compensation to the owner. Pennsylvania Hospital v. City of Philadelphia, 245 U.S 20, 22, 38 S.Ct. 35, 62 L.Ed. 124; Galveston Wharf Co. v. City of Galveston, 260 U.S. 473, 476, 43 S.Ct. 168, 67 L.Ed. 355; State of Georgia v. City of Chattanooga, 264 U.S. 472, 480, 44 S.Ct. 369, 68 L.Ed. 796; Missouri, K. & T. Ry. Co. v. State of Oklahoma, 271 U.S. 303, 307, 46 S.Ct. 517, 70 L.Ed. 957; City of Osceola v. Chicago, B. & Q. R. Co., 8 Cir., 196 F. 777; Cornwall v. Louisville & Nash. R. Co., 87 Ky. 72, 80, 7 S.W. 553. The power of eminent domain is "so inherently governmental in character and so essential for the public welfare" as not to be susceptible of abridgement by agreement.

■ It would clash with the well established principle just stated to hold that the judgment of the state circuit court, ordering the Fiscal Court of Greenup County to perform its contract, precluded the county in the future from exercising its power of eminent domain to acquire an easement and right of way over the railroad tracks of appellant, in the same vicinity if the public interest should require it. Indeed, we find no provision in the judgment of the circuit court forbidding Greenup County's opening and maintaining a road across the railroad tracks of appellant at another time, or at another place. No implication of an intention on the part of the state court to exercise unauthorized power may be indulged.

■ No authority is vested in the United States District Court, or in this court, to require, as a condition precedent to entry of a judgment of condemnation of the right of way or easement, that Greenup County shall reimburse appellant for its expenditures in complying with its contract relating to the construction of the single overhead crossing and the closing of the three grade crossings. All that can be awarded appellant in this condemnation proceeding is just compensation for its property taken by the county in the exercise of its power of eminent domain. Whether the railroad company may have a right of action against the county for breach of contract is not for us to say in the instant controversy.

The district court rested its opinion upon two propositions: (1) that the determination of the *necessity* for the condemnation of an easement for the road rested exclusively with Greenup County as a legislative body; and (2) that the railroad company had not appealed to the circuit court within 35 days, as required by statute, from the judgment of the Fiscal Court of Greenup County declaring the necessity for the road. See Kentucky Revised Statutes, sections 178.120; 416.110; 178.115.

The two propositions will be discussed in order. The district court stated, with reference to the second defense which was stricken, that it could not pass upon the question of necessity for the proposed road under the allegations of the answer. It was considered that "the naked question of necessity is expressly in the judgment of the Fiscal Court of Greenup County." The new grade crossing proposed to be established is only 365 feet from the White Oak Crossing, which the fiscal court on June 7, 1939, declared should be closed and abandoned "in the interest of public safety and

convenience." It is true that in its resolution of April 6, 1943, the fiscal court declared that the new road would be of great service to several hundred persons, many of whom were engaged in war work, and to numerous others who wished to attend a certain high school or to call at a certain postoffice; and that the establishment of the new road would be in the best interest of Greenup County and its citizens. But we have in the record no proof of the assertions made in this resolution, for, as we have seen, the case was not permitted to go to trial for development of the facts.

First, considering the pertinent statutes, we find that section 178.120 of the Kentucky Revised Statutes empowers the fiscal court of any county in the state, when deemed in the best interest of the county, to condemn land, "under the procedure set forth in KRS 416.110," to open and establish public roads.

Section 416.110 of the Kentucky Revised Statutes provides: "(1) When any fiscal court desires to condemn land under the authority of KRS 178.120, it shall adopt a resolution ordering the condemnation of the required land. The resolution shall set forth the facts contemplated by KRS 178.-120, give a general description of the land, and the name of the owner if known, and shall direct the county attorney to institute the proceedings. (2) The county attorney shall file the petition for condemnation in the county court in the name of the county, and shall attach to the petition as an exhibit a certified copy of the resolution of the fiscal court. *The resolution shall be prima facie evidence of the public use and necessity for the condemnation.*" [Italics supplied.]

The Court of Appeals of Kentucky has stated that the necessity for the exercise of the power of eminent domain is primarily and "almost exclusively" for the determination of the legislative branch of government. Spahn v. Stewart, 268 Ky. 97, 106, 103 S.W.2d 651.

But it would seem that the Kentucky authorities do not hold that the *necessity* for condemnation may not be determined in the condemnation proceeding, even though the legislative body vested with power to condemn has concluded that the land sought to be condemned is necessary for the public use.

In Louisville & Nashville R. Co. v. City of Louisville, 131 Ky. 108, 118, 119, 114 S.W. 743, 747, 24 L.R.A.,N.S., 1213, it is stated that the courts will not, "except in rare case," inquire into the necessity of opening a street or examine the motives or reasons inducing the municipal authorities to order it opened; and that if the legislature has determined the use or purpose of condemnation to be a public one, its judgment will be respected by the courts, unless the use be palpably private "or the necessity for the taking plainly without reasonable foundation." This language qualifies the statement of the prevailing rule that the action of municipal authorities, in declaring it necessary to open a street, is conclusive.

Louisville & N. R. Co. v. City of Louisville, 190 Ky. 214, 216, 227 S.W. 160, 161, reiterates the doctrine of the case just cited. There, *the court actually reviewed the proffered evidence* which it held "did not come up to the requirement of the rule, and was properly rejected, as not being sufficient to authorize the court to substitute its judgment for the judgment of the municipal authorities on the question of necessity." Compare Rindge Co. v. Los Angeles County, 262 U.S. 700, 708, 43 S.Ct. 689, 67 L.Ed. 1186.

Likewise, in Baxter v. City of Louisville, 224 Ky. 604, 610, 611, 6 S.W.2d 1074, 1077, a condemnation proceeding, the Court of Appeals of Kentucky adhered to the doctrine of the Louisville & N. cases *supra,* and stated, *inter alia,* that "the question of the necessity of the taking is a preliminary one that should be settled by the court on the evidence heard before it." It was held that the trial court had not erred in rejecting certain evidence, and that it would be idle to reverse and remand the case for another trial "if the evidence, which was refused, would not have changed the result."

We pass to consideration of two more recent opinions of the Court of Appeals of Kentucky. In Jefferson County v. Clausen, May 5, 1944, 297 Ky. 414, 419, 180 S.W.2d

297, 300, the court stated that the necessity of taking land for a public purpose has repeatedly been said to be a matter for the court to determine, but that in declaring through their constituted authorities that the taking of private property is necessary, for an authorized public use, counties and municipal corporations are exercising a public function entrusted to their wisdom and discretion by the legislature; and that, therefore, the presumption is indulged that the taking of the property is necessary throwing the burden upon objecting persons to show the contrary. It was then stated that "while the issue of necessity was raised by the exceptions, the defendants offered no evidence upon it and the presumption of necessity and right prevailed as a matter of law."

In Smallwood v. Hardin County, December 15, 1944, 299 Ky. 53, 56, 184 S.W.2d 230, 231, *no appeal had been taken from the resolution of the fiscal court* establishing a road and no irregularity in procedure was charged against the county, the trial in the county court being on the issue of damages alone. This issue was retried when an appeal was taken to the circuit court, from the judgment of which an appeal to the Court of Appeals of Kentucky was pursued. There, the property owners for the first time raised the issue of the necessity for the taking of their land. The Kentucky Court of Appeals treated that issue as before it, despite the fact that it had not been contested in either the establishment proceeding or the condemnation suit. After stating that the fiscal court's resolution of necessity was *prima facie* evidence of the fact, the court declared: "The evidence on the issue of necessity to overcome such presumption was not sufficient to do so, leaving out altogether the question as to whether or not the stipulation admitted such necessity."

█ We think this last cited authority demonstrates the error of the district court in striking appellant's answer upon the ground that it had not appealed to the circuit court within the thirty-five days specified in the statute from the judgment of the fiscal court proclaiming the necessity for the condemnation of the right of way or easement in issue.

The Kentucky statute, section 178.115, which grants a person aggrieved by the establishment of public roads or structures the right within thirty-five days to appeal from the order or resolution of the fiscal court to the circuit court does not, in terms, provide that the judgment of the circuit court shall be final. The prescribed procedure is in the *establishment proceeding;* and the failure to appeal therein should not, in our reasoning, deprive the owner of the land to be taken for public use of his right to challenge the *necessity* of the taking in the subsequent condemnation proceeding essential to the acquisition of the land by the condemnor.

█ The police power of a state is subject to the constitutional limitation that it may not be exerted unreasonably, or arbitrarily. Nashville, Chattanooga & St. Louis Railway v. Walters, Commissioner of Highways, 294 U.S. 405, 415, 55 S.Ct. 486, 79 L.Ed. 949. If Greenup County is exercising its power of eminent domain unreasonably and arbitrarily, appellant should not be shut off from showing, if it can, *in this condemnation proceeding*, that, as a matter of fact, there have been no changed conditions which necessitate in the public interest the condemnation of the proposed right of way, or easement, across appellant's tracks. To do so, appellant must pull a heavy laboring oar, but at least it is entitled to strain muscles in the attempt.

The order of the district court striking the second and third defenses set up in appellant's amended answer is set aside, its judgment is reversed, and the cause is remanded for trial upon the merits.